OPINION OF THE COURT
Fuchsberg, J.
 We uphold in this case the affirmative defense provisions of the New York obscenity statute (Penal Law, § 235.15, subds 1, 2) against a constitutional attack brought on the grounds of due process and equal protection.
Appellant Joseph Illardo was charged in an information with the knowing promotion of obscene material for selling a magazine entitled Puritan to a plainclothes police officer (Penal Law, § 235.05, subd l).[1] As a result of preliminary judicial screening, it was determined that the magazine in fact was obscene within the meaning of section 235.00, a finding appellant does not contest for the purpose of his assault on the accusatory instrument. Instead, in moving to dismiss the information he relies on the contention that the affirmative defense provisions of section 235.15 are constitutionally infirm and that, because these provisions could not be severed from the remainder of the statute, the defect renders the proscrip *413 tion in section 235.05 invalid as well.[2] In passing we also note that, at least at this stage, defendant has mounted no such attack against the rest of the statute and we therefore have no occasion to deal with it here.
 The motion to dismiss was granted by the Buffalo City Court, which declared both subsections unconstitutional. On the People’s appeal to the Erie County Court, the order was reversed on the law. This appeal, in turn, is now here by reason of a grant of leave by a Judge of this court pursuant to CPL 460.20. For the reasons which follow, we believe the information should be upheld.
Turning at once to the challenged statute itself, subdivision 1 of section 235.15 provides that it is an affirmative defense if the "allegedly obscene material was disseminated * * * [to] persons or institutions having scientific, educational, governmental or other similar justification for possessing or viewing the same.” Appellant’s claim is that each of the adjectives, "scientific”, "educational” and "governmental”, and, especially, the phrase "other similar justification” are so imprecise as to render this section void for vagueness. With respect to subdivision 2 of section 235.15 of the Penal Law, which affords another affirmative defense to certain nonmanagerial employees of motion picture theatres, appellant argues the exclusion of bookstore employees like himself violates equal protection.
 Mindful of the presumption of constitutionality overlaying duly enacted statutes (People v Pagnotta, 25 NY2d 333, 337), we first address the contention that subdivision 1 violates due process by " 'fail[ing] to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden’ ” (Papachristou v City of Jacksonville, 405 US 156, 162, citing United States v Harriss, 347 US 612, 617). Indeed, the constitutional requisite that a statute be "informative on its face” (People v Firth, 3 NY2d 472, 474) serves not only to assure that citizens can conform their conduct to the dictates of law but, equally important, to guide those who must administer the law (see People v Berck, 32 NY2d 567, 569-570; Smith v Goguen, 415 US 566, 572-575; Interstate Circuit v Dallas, 390 US 676, 689). As common sense and experience *414 both tell us, unless by its terms a law is clear and positive, it leaves virtually unfettered discretion in the hands of law enforcement officials and thereby may encourage arbitrary and discriminatory administration.
However, the quest for definiteness does not preclude the Legislature from using ordinary terms to express ideas that find adequate interpretation in everyday usage and understanding (People v Byron, 17 NY2d 64, 67; see People v Cruz, 48 NY2d 419). For, "Condemned to the use of words, we can never expect mathematical certainty from our language” (Grayned v City of Rockford, 408 US 104, 110 [Marshall, J.]). Recognizing reality, the Constitution therefore does not require impossible standards; it is enough that the language used " 'conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices’ ” (Miller v California, 413 US 15, 27-28, n 10, quoting Roth v United States, 354 US 476, 491-492; see Trio Distr. Corp. v City of Albany, 2 NY2d 690, 696).
Saying so, we nevertheless appreciate that, where First Amendment rights are involved, to forestall the possibility of inhibiting the exercise of free speech, a statute’s imprecision may not be lightly overlooked (Grayned v City of Rockford, supra, at p 109). But, it is now established doctrine that obscene matter falls outside the scope of the First Amendment (Roth v United States, supra), and thus the amendment plays at best a peripheral role in the scrutiny of the statute, prohibiting as it does the promotion of the material it describes. And, where the statute deals not with a proscription itself but, instead, with affirmative defenses, statutory provisions which become relevant only after an arrest is made and charges are filed, any uncertainty in its terms is far less likely to be an inducement to irresponsible law enforcement.
Against this background, we proceed to examine subdivision 1 of section 235.15 in detail. The language of the section, we note, is taken almost verbatim from the Model Penal Code (§ 251.4, subd 3), the drafting of which was neither hasty nor unskilled. As far as the words "scientific”, "educational” and "governmental” are concerned, surely these are within the compass of the ordinary citizen. While their exact definition may vary with the lexicon consulted, through daily usage the words have acquired a definite import. In this respect, these may be expressions of which it can be said that their explication proves far more troublesome than each of the words *415 standing alone; to the “man in the street” they may evoke a reliable, if visceral, response (see Jacobellis v Ohio, 378 US 184, 197 [“I know it when I see it”, Stewart, J.]). So, avoiding a mere stringing of synonyms, we prefer to await the results of judicial construction of these words after exploration in plenary proceedings (see, e.g., Matter of Swedenborg Foundation v Lewisohn, 40 NY2d 87, 94 [interpreting "educational” within the Real Property Tax Law (§ 421, subd 1) to refer to "the development of faculties and powers and the expansion of knowledge by teaching, instruction or schooling”]).
For our purposes here it suffices to examine these words in juxtaposition with some analogous terms that appear in the definition of obscenity itself. As formulated in Miller v California (413 US 15, supra) and subsequently by our Legislature in section 235.00 (subd 1, par [c]) of the Penal Law, obscene material, inter alia, must be said to lack "serious literary, artistic, political or scientific value”.[3] Patently, the term “scientific”, therefore, cannot be said to be so vague in meaning as to deny due process. Nor are the terms "literary”, "artistic” and "political” any more or less precise than the words "governmental” and "educational” in subdivision 1 of section 235.15. Rather, if anything, the wording of the obscenity test would seem on its face to introduce yet another subjective element by prefacing the terms with the qualifier "serious”. Nevertheless, though there may be imaginable instances in which some difficulty in determining on which side of the line a particular fact situation falls, this alone does not render the statute’s language impermissibly vague (see Miller v California, 413 US, at pp 27-28, supra; People v Heller, 33 NY2d 314, 329); the reasoning is certainly no less applicable when the language defines not a criminal offense but an affirmative defense.
However, as indicated, the statute does not stop after reciting the possibilities that the purchaser of obscene material *416 may have a "scientific, educational [or] governmental” justification. It goes on to permit the affirmative defense in circumstances presenting "other similar justification”, a phrase which appellant labels "irredeemably vague”. But, in our view the phrase obviously represents no more than a common drafting technique designed to save the Legislature from spelling out in advance every contingency in which the statute could apply (see People v Klose, 18 NY2d 141, 145). For, when foreseeable circumstances are too numerous or varied for particular enumeration, the Legislature, employing the familiar principles of "ejusdem generis” may permissibly rely on the courts to give content to the phrase.
Under that canon of statutory construction, the phrase "other similar justification”, though susceptible of a wide interpretation, becomes one limited in its effect by the specific words which precede it; in the vernacular, it is known by the company it keeps (McKinney’s Cons Laws of NY, Book 1, Statutes, § 239). Relying on this principle, courts have had no problem construing similar phrases as encompassing or excluding situations that do not fall within the specifically described terms of a statute.
Likewise, in the case before us, the final clause in subdivision 1 of section 235.15 does not expand the scope of the section beyond the three specifically listed terms. Rather, the phrase "other similar justification” should be viewed as "graying the edges” of each of the enumerated justifications so that, in circumstances which reasonably can be thought to be within its embrace, the defense may nonetheless be available. Also, one can readily conceive of a seller raising a defense that the purchaser was serving some legitimate therapeutic or diagnostic purpose related to problems of human sexuality or, again purely by way of illustration, that the purchaser was engaged in a research project relating to perceptions of male/ female sex roles; each might be considered a circumstance which, strictly speaking, would not fit within conventional concepts of what is "scientific”, "governmental” or "educational”. Our function today, however, is not to pass on the validity of section 235.15 in hypothetical situations, but rather to decide whether the phrase "other similar justification” complies with the dictates of due process. As indicated, we find that it does.
Accordingly, we next focus, albeit more briefly, on subdivision 2 of section 235.15, which appellant would have us *417 declare violative of equal protection. In pertinent part, this section makes it an affirmative defense to an obscenity prosecution that the person charged was employed as "a motion picture projectionist, stage employee or spotlight operator, cashier, doorman, usher, candy stand attendant, porter or in any other non-managerial or non-supervisory capacity in a motion picture theatre; provided he has no financial interest, other than his employment, which employment does not encompass compensation based upon any promotion of the gross receipts, in the promotion of obscene material for sale, rental or exhibition or in the promotion, presentation or direction of any obscene performance, or is in any way responsible for acquiring obscene material for sale, rental or exhibition”.
The purpose of this section, a provision common in substance to the obscenity statutes of several other States, is to afford a defense to those who function merely as employees, while withholding penal sanctions for those whose financial stake in the enterprise dictates that they bear the brunt of criminal responsibility (see Obscenity Law Project, 52 NYU L Rev 810, 896-897). Appellant’s challenge boils down to a claim that the statutory classification, embracing the class of non-managerial motion picture theatre employees but not similarly situated employees of adult bookstores is underinclusive to a fatal degree.
The equal protection clause of the Fourteenth Amendment, however, is not violated so long as the legislative classification is not arbitrary and can be said to bear a fair and substantial relation to some manifest evil reasonably perceived by the Legislature (see Town of Huntington v Park Shore Country Day Camp, 47 NY2d 61, 66; Williamson v Lee Opt. Co., 348 US 483, 489). That means that "If the classification has some 'reasonable basis’, it does not offend the Constitution simply because [it lacks] '* * * mathematical nicety or because in practice it results in some inequality’ ” (Dandridge v Williams, 397 US 471, 485, quoting Lindsley v Natural Carbonic Gas. Co., 220 US 61, 78; see Matter of Levy, 38 NY2d 653, 658-661; Matter of Figueroa v Bronstein, 38 NY2d 533, 535-536).
In applying these standards of rationality, one need not contest the fact that an employee of a bookstore may lack financial responsibility and control over business operations to the same extent as does an employee of a motion picture theatre in order to find a reasonable basis for the distinction. *418 Unlike a theatre, in which patrons view the film in enclosed surroundings, and do not take possession of the film for circulation elsewhere, a bookstore, once it sells obscene matter, frees it for subsequent distribution by the original purchasers. The Legislature, therefore, conceivably could have viewed this risk of further dissemination as indicative of aggravated culpability, thereby justifying a greater deterrent in the form of denial of the affirmative defense to bookstore employees (see Wheeler v State, .281 Md 593, 611-612 [Murphy, Ch. J., dissenting]). Or, as an alternative basis for the difference in its treatment of these classes of defendants, the Legislature, rightly or wrongly, may have thought it more probable that the typical motion picture theatre would employ a larger percentage of nonmanagerial or nonsupervisory personnel than would the typical adult bookstore, and so have drawn the boundaries of the affirmative defense accordingly. The statute might thus permissibly be seen as "addressing itself to the phase of the problem which seems most acute to the legislative mind” (Williamson v Lee Opt. Co., 348 US 483, 489, supra).
One reason or the other, it is not our function to decide whether the line of demarcation the Legislature selected was unwise, or that its purpose could better have been achieved in another way, or even that it would be ineffective to accomplish its end. So long as it has a rational basis, it is not for us, but was for those who enacted the statute to choose the particular course that was taken. On this basis, bearing in mind the heavy burden appellant must shoulder to demonstrate the statute’s invalidity, we cannot say that the classification, without more, must fall to appellant’s constitutional challenge.
Consequently, the order of the County Court should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order affirmed.

. The text of the statute reads:
"A person is guilty of obscenity in the second degree when, knowing its content and character, he:
"1. Promotes, or possesses with intent to promote, any obscene material”.

. The fact that appellant has not yet proceeded to trial does not divest him of standing to raise the statutory affirmative defenses. The moment the prosecution against him was mounted, appellant gained the right to rely on any legitimate defense, including those incorporated in section 235.15.

. Amended in 1974 to reflect Miller’s standards, the statute reads: "Any material or performance is 'obscene’ if (a) the average person, applying contemporary community standards, would find that considered as a whole, its predominant appeal is to the prurient interest in sex, and (b) it depicts or describes in a patently offensive manner, actual or simulated: sexual intercourse, sodomy, sexual bestiality, masturbation, sadism, masochism, excretion or lewd exhibition of the genitals, and (c) considered as a whole, it lacks serious literary, artistic, political, and scientific value. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other specially susceptible audience.”