James PIEPENBURG, Plaintiff,

v.

Roger CUTLER, City Attorney of Salt Lake City, Utah, and E. D. Hayward, Sheriff of Salt Lake County, Utah, Respondents.

Civ. No. C 80–0637.

United States District Court,
D. Utah, C. D.

Dec. 3, 1980.

---

Jerome H. Mooney, Salt Lake City, Utah, Richard J. Hertzberg, Phoenix, Ariz., for plaintiff.

Gregory L. Bown, Salt Lake County Atty., Stanley H. Olsen, Asst. City Pros. Atty., Salt Lake City, Utah, for respondents.

## MEMORANDUM DECISION AND ORDER

JENKINS, District Judge.

James Piepenburg, petitioner herein, was convicted by a jury in the Third District Court, Salt Lake County, Utah on the 18th day of May, 1978, of three violations of 76–10–1204, Utah Code Annotated, a statute which prohibits, among other things, the exhibition of pornographic films.[1]

He appealed his conviction to the Utah State Supreme Court. The Utah Supreme Court unanimously affirmed his conviction on October 26, 1979.[2] Petitioner made no effort to take the matter from the Utah Supreme Court to the United States Supreme Court by certiorari or appeal.

In late October of this year, 1980, when Piepenburg, by then a resident of Arizona, realized his extradition to Utah was imminent, he returned to Utah, submitted to the custody of the Salt Lake County Sheriff and concurrently therewith filed this action seeking a Writ of Habeas Corpus from this court and a stay of execution of the Judgment of the state court pending final determination of this matter. This court entered a stay of execution of the state court Judgment pending the determination of the issues raised by this petition.

Petitioner has exhausted his state remedies. Jurisdiction is proper under 28 U.S.C. § 2254.

The petition came on for hearing before the undersigned on the 10th day of November, 1980. The matter was briefed, argued and submitted on the record of the state court proceedings. No additional evidence was offered. The court thereafter in open court announced its decision to deny the issuance of the writ but reserved the right to restate and to amplify its reasons in a written opinion.

Thereafter, on stipulation of the parties entered on the record, the stay of execution of the state court Judgment heretofore entered was to remain in force and effect until the lodging of a written opinion and order in this matter and until further order of this court.

1. Section 76–10–1204 provides in part: ___ (1) A person is guilty of distributing pornographic material when he knowingly:

(a) Sends or brings any pornographic material into the state with intent to distribute or exhibit it to others; or

(b) Prepares, publishes, prints, or possesses any pornographic material with intent to distribute or exhibit it to others; or

(c) Distributes or offers to distribute, exhibits or offers to exhibit, any pornographic material to others; or

(d) Writes, creates, or solicits the publication or advertising of pornographic material; or

(e) Promotes the distribution or exhibition of material which he represents to be pornographic; or

(f) Presents or directs a pornographic performance in any public place or any place exposed to public view or participates in that portion thereof which makes it pornographic.

2. *State v. Piepenburg*, 602 P.2d 702 (Utah 1979).

Petitioner's contentions are explicitly set forth in his memorandum annexed to his petition. Petitioner acknowledges therein that in his appeal to the Utah State Supreme Court, he "raised all issues raised" in his petition filed in this court.

Petitioner contends that his state court conviction is constitutionally infirm for the following reasons:

   I.   The process followed deprived him of a *prompt* determination in an adversary hearing of whether or not the films seized were obscene and thus deprived him of due process.

   II.   The statute of which he stands convicted is unconstitutionally vague.

   III.   The statute of which he stands convicted violates the equal protection clause of the United States Constitution.

   IV.   The state court judge's *sua sponte* interruption of his attorney's final argument to the jury deprived him of "due process".

He asserts that as a result of such infirmities his custody is in violation of the Constitution of the United States.

Each of these assertions was addressed by the State Supreme Court and each was there found to be without merit. Each is indeed without merit.

On May 27, 1977, three films were seized from a public theater by Salt Lake City police officers. Petitioner makes no claim that the original seizure of the three films is in any way infirm. A warrant was properly issued by a neutral magistrate upon a specific and explicit affidavit and after a finding of probable cause. The seizure was pursuant to the warrant. The petitioner at the time of argument in this matter expressly acknowledged through counsel that the original seizure was lawful. No one here contends that the films are not obscene—pornographic—within the meaning of the state statute.

An officer pursuant to lawful warrant may seize or arrest an article and take it into his custody. He may do so for a wide variety of reasons, including the preservation and subsequent use thereof as evidence in the prosecution of a person charged with an offense in which the article plays some part. On many occasions, one may seize an offending article for purposes of forfeiture or destruction, an action relating to property itself, and may do so even when the actual owner of such an article is unknown. *See, United States v. 1978 Cadillac El Dorado 2-Door Coup*, 489 F.Supp. 532 (D.Utah 1980).

In this instance three films were seized. It is conceded the seizure was lawful. Thereafter petitioner was charged with the offense of which he stands convicted. The films seized were used as evidence in his prosecution.

The process which resulted in petitioner's conviction was a standard process. A complaint was filed, a preliminary hearing was held by a committing magistrate, the defendant was bound over to state district court, an information was filed, and ultimately the matter was tried to a jury. There was one minor aberration. For reasons which the state district court did not state, the case was returned to the committing magistrate prior to trial for a second preliminary hearing wherein the defendant was again bound over to district court for trial. The trial took place. The jury convicted.

   I.   Petitioner contends that such a procedure is defective because somewhere in that process of prosecution he was entitled to a "prompt" adversary hearing as to whether or not the films seized were "obscene" and that he did not get such a prompt hearing. He asserts that *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973) mandates such a procedure. The contours of *Heller* are somewhat blurry. The core holding of the case is that adversary hearings need not precede the seizure of an allegedly obscene film to preserve it as evidence in a criminal proceeding so long as the search warrant was properly issued and that a prompt adversary hearing follow the seizure. Language in the opinion pertinent to analysis of this holding is as follows:

A copy of the film was temporarily detained in order to preserve it as evidence. There has been no showing that the seizure of a copy of the film precluded its continued exhibition. Nor, in this case, did temporary restraint in itself "become a form of censorship," even making the doubtful assumption that no other copies of the film existed.... A judicial determination of obscenity, following a full adversary trial, occurred within 48 days of the temporary seizure. *Petitioner made no pre-trial motions seeking return of the film, or challenging its seizure, nor did he request expedited judicial consideration of the obscenity issue. So it is entirely possible that a prompt judicial determination of the obscenity issue in an adversary proceeding could have been obtained if petitioner had desired. Id.* at 490, 93 S.Ct. at 2793 (citations omitted) (emphasis added).

[S]eizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film. If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a *prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible.* In addition, on a showing to the trial court that other copies of the film are not available to the exhibitor, *the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding.* Otherwise the film must be returned.

With such safeguards, we do not perceive that an adversary hearing prior to a seizure by lawful warrant would materially increase First Amendment protection...... The necessity for a prior ju-

dicial determination of probable cause will protect against gross abuses, while the availability of a prompt judicial determination in an adversary proceeding following the seizure assures that difficult marginal cases will be *fully considered* in light of First Amendment guarantees, with only a minimal interference with public circulation pending litigation. The procedure used by New York in this case provides such First Amendment safeguards.... *Id.* at 492–93, 93 S.Ct. at 2794–95 (emphasis added).

There can be little doubt that the *Heller* court was concerned with the possibility that protected films, although lawfully seized, might be restrained indefinitely prior to a criminal trial at which they are determined to be protected. However, nowhere in *Heller* does the Court expressly articulate the determination to be made at the adversary hearing it required. There is no lack of authority for the proposition that the "obscenity issue" to be determined at such hearing is the "probable obscenity" of the film, *see e. g. Universal Amusement Company, Inc. v. Vance*, 559 F.2d 1286, 1299 (5th Cir. 1977), *aff'd per curiam* 587 F.2d 176 (5th Cir. 1978) (*en banc*), cert. denied *sub nom. Butler v. Dexter*, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 296 (1979), or the validity of the seizure, *see e. g. United States v. Echols*, 577 F.2d 308 (5th Cir. 1978), cert. denied 440 U.S. 939, 99 S.Ct. 1288, 59 L.Ed.2d 499 (1979); *United States v. Sherwin*, 539 F.2d 1 (9th Cir. 1976). Section 76–10–1212(3), Utah Code Annotated, Utah's apparent response to *Heller*, indicates a similar view. That section provides:

76–10–1212(3). In the event that a search warrant is issued and material alleged to be pornographic is seized under the provisions of this section, any person claiming to be in possession of this material or claiming ownership of it at the time of its seizure may file a notice in writing with the magistrate within 10 days after the date of the seizure, alleging that the material is not pornographic. The magistrate shall set a hearing within seven days after the filing of this notice,

or at such other time as the claimant might agree. At this hearing evidence may be presented as to whether there is probable cause to believe the material seized is pornographic, and at the conclusion of the hearing the magistrate shall make a further determination of whether probable cause exists to believe that the material is pornographic. A decision as to whether there is probable cause to believe the seized material is pornographic shall be rendered by the court within two days after the conclusion of the hearing. If at the hearing the magistrate finds that no probable cause exists to believe that the material is pornographic, then the material shall be returned to the person or persons from whom it was seized. If the material seized is a film, and the claimant demonstrates that no other copy of the film is available to him, the court shall allow the film to be copied at the claimant's expense pending the hearing.

Clearly, the "prompt adversary hearing" available in Utah allows only for a finding of probable obscenity. Moreover, a fair interpretation of the provision leads to the conclusion that the copying of a seized film and the exhibition of the copy could occur only prior to a hearing wherein probable cause was determined. I think *Heller* requires more. Close examination of the language of the *Heller* Court set forth above indicates that it is a judicial decision on the merits of the obscenity issue, albeit a preliminary one pending the criminal trial, that *Heller* requires.

First, the *Heller* Court repeatedly speaks in terms of a prompt judicial determination of the *obscenity issue*. Nowhere is it implied that the "obscenity issue" is the issue of "probable obscenity." The facial import of the words is that the hearing should result in a determination of whether or not the film is obscene. At one point, the Court made the following remark: "The necessity for a prior judicial determination of probable cause will protect against gross abuses, while the availability of a prompt judicial determination in an adversary proceeding following the seizure assures that difficult marginal cases will be *fully* considered in light of First Amendment guarantees." 413 U.S. at 493, 93 S.Ct. at 2795 (emphasis added). It seems unlikely that the full consideration contemplated by *Heller* consists of inquiring into "probable obscenity" when it is seen that the Court views the determination of "probable cause" prior to seizure as the shield against gross abuses. The juxtaposition of the term "probable cause" with the requirement that cases be "fully considered" in the adversary hearing suggests that finer tuning is to inhere in that proceeding.

Second, the Court suggested that 'copying' of the film should be permitted *pending* the adversary hearings. *Id.* at 492–93, 93 S.Ct. at 2794–95. Nothing is said about exhibiting a copy of the film after such hearing. The implication is that after the judicial determination of the obscenity issue, the need for a copy will be obviated. Either the film will be adjudicated obscene, in which event the exhibitors would have no First Amendment right to exhibit the film, or it will be determined not to be obscene, in which event the original would be returned.

Third, a prompt determination of only "probable obscenity" is not one of the "sensitive tools" necessary in the construction of First Amendment safeguards, and would do little to ensure that protected speech is not censored through administrative delay. A determination of "probable obscenity" would only affirm the *status quo*, i. e. that the seized materials have been determined to be probably obscene by a judicial officer who "focused searchingly" on the issue of obscenity. *See Marcus v. Search Warrant*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). Thus, in the event that "probable obscenity" is determined at the adversary hearing, and the materials are later found to be protected at the criminal trial, First Amendment rights would have been adversely affected in the interim.

I believe that First Amendment rights would be adequately protected even in the event that "probable obscenity" is the only

issue to be resolved at the Heller-type hearing, if exhibition of copies of seized materials may continue up until the criminal proceedings. However, neither Heller nor the Utah procedure contemplate exhibition of copies after the early hearing. If the Utah provision permitting copying of a seized film "pending the hearing" can be construed to permit exhibition during the pendency of trial, I think it comports with the First Amendment. If not, it is infirm.

I draw attention to the arguable inadequacy of the Utah procedure only in passing. Petitioner did not question the validity of procedures available to him in any state proceeding, and does not do so here. Nor would it be of any avail to him. He concedes that the seizure of the film comported with Fourth Amendment dictates. Any infirmities in the Utah adversary hearing procedure would impinge on petitioner's First Amendment rights. Such would be vindicated by return of the films, not by their suppression at trial. *Heller, supra*, at 493 n. 11, 93 S.Ct. at 2795; *United States v. Sanders*, 597 F.2d 63 (5th Cir. 1979); *United States v. Bush*, 582 F.2d 1016, 1020 n.2 (5th Cir. 1979); *United States v. Sherwin, supra*, at 8 n.11. Petitioner never asked for them.

While petitioner has not contested the validity of § 76–10–1212(3), it is his position that his request that the magistrate view the films at the preliminary hearing was essentially a request for the adversary hearing contemplated by *Heller.* Assuming now that *Heller* requires only a determination of probable cause to believe the seized films are obscene, this argument is without merit.

Petitioner mixes the procedure made available to ensure against prior restraint of First Amendment protected speech and the procedure required for an ordinary criminal prosecution.

One must distinguish between the "availability" of a prompt adversary hearing held to determine whether the article seized is subject to retention, return or copying by the seizing authorities, and a preliminary hearing in a criminal prosecution where a magistrate finds probable cause to bind a person (not an article) over for trial and a seized article or its duplicate is used as evidence at such hearing and subsequently at such trial.

The adversary hearing deals with the article seized. The preliminary hearing deals with the beginning stages of the prosecution of a person for an offense charged.

The ends served by the adversary hearing and the preliminary hearing are different. Each may take place without the other ever taking place. The preliminary hearing is self executing. The adversary hearing is not. The preliminary hearing deals with whether or not a crime has been committed and the reasonable cause to believe whether a defendant has committed the offense charged. The use of a seized article or a copy thereof may be relevant evidence in making *that* determination at the preliminary hearing.

The adversary hearing deals with the article seized, and provides an opportunity to a person with standing—any interested party—not necessarily a defendant—to have a prompt determination as to whether the article is protected speech and ought not to have been seized at all, and to seek to make it or a copy thereof available for current use by such party so as to minimize any mistaken impairment of lawful speech by the seizing body. This procedure is to make sure that lawful speech, First Amendment speech, is not restrained through seizure and subsequent inaction on the part of the seizing authority. The occurrence or non-occurrence of the adversary hearing has nothing at all to do with the prompt prosecution of a defendant for an offense where the seized article or its duplicate is used as part of the evidence. Consequently, petitioner never requested a Heller-type hearing.

II. Is the statute of which petitioner stands convicted unconstitutionally vague? Petitioner was convicted of the violation of § 76–10–1204, U.C.A.—exhibiting pornographic material. He in no sense attacks that section of the statute as being unconstitutionally vague.

The specific thrust of the petitioner's argument is that certain affirmative defenses found not at § 76–10–1204, U.C.A., but found at § 76–10–1208 are vague. Section 76–10–1208 states: "Affirmative defenses. —(1) It is an affirmative defense to prosecution under this part that the distribution of pornographic material was restricted to institutions or persons having scientific, educational, governmental, or other similar justification for possessing pornographic material." An examination of the record reveals no effort on the part of the petitioner at trial to raise an affirmative defense that his exhibition of pornographic materials was directed to scientific, governmental or educational institutions or persons. Nor, except in the most oblique fashion did petitioner suggest that his commercial exploitation of pornographic materials met the "similar justification" affirmative defense of the statute which he now complains is vague.

■ At the time of the instruction conference his argument to the trial court was that no one should be treated differently than anyone else, that any adult is entitled to see what any scientist, governmental employee or educator may see, and if petitioner restricted his exhibition of the three films to adults he should be found not guilty. He sought an instruction to that effect and such was denied by the state court. But such request is not evidence of an *"affirmative defense"*. None was referred to in his opening statement. None was offered. None was referred to in his closing argument. He now suggests he may have offered an affirmative defense if he had known what could have been offered as "similar justification". The point is, he didn't try, and thus ought not now to be in a position to suggest that the "similar justification" section of the affirmative defense statute is unconstitutionally vague. He was deprived of nothing at the time of trial because he asserted no affirmative defense. In short, he was in no sense prejudiced by vagueness because he made no use of the statute which he now says is vague.

However, the affirmative defense statute is not vague. It is capable of understanding. Similar language is found in the opinion of the High Court when dealing with pornography and the guidelines for a trier of fact—whether the work as a whole "lacks serious literary, artistic, political, or scientific value." *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

Even if vague, the affirmative defense section is severable under § 76–10–1211 U.C.A.

■ III. Has petitioner been denied equal protection in violation of the Fourteenth Amendment of the U. S. Constitution? First, the specific section of the statute of which he stands convicted treats everyone alike. The section which petitioner claims denies him equal protection is the affirmative defense section and therein, he asserts, inappropriate classifications are created for persons who may have a state sanctioned interest in possessing pornographic materials. The statute is not on its face unconstitutional. The state may create reasonable classifications and the classifications herein created are reasonable, rational, understandable and in furtherance of legitimate and articulable state interests. Such does no violence to the equal protection clause.

■ Does the statute as applied, the statute in action, deny petitioner equal protection? Of course it does not, he having elected to assert no affirmative defense demonstrating that his actions involved distribution to persons within the defined categories nor to others similarly justified in *receiving such materials. He was in no sense prejudiced.*

IV. Did the state court's *sua sponte* interruption of petitioner's argument to the jury deprive him of "Due Process"? The state trial judge spoke up during petitioner's closing argument to the jury. He corrected him and he admonished him. The trial judge in doing so neither misspoke the law nor did he deprive petitioner of a "fair trial"—due process.

The trial judge spoke only what the United States Supreme Court had previously spoken concerning community standards and what has been incorporated in the Utah statutes.

The interchange was as follows:

"MR. HERTZBURG: Now, as I told you—and this is very important—they have got to prove community standards two places, or they haven't made their case. And I suggest to you nobody was qualified, not one scintilla of evidence came from that stand on community standards that supports their case. Not one person even gave an opinion that it violated community standards. The burden of proof is on them and they want you to guess. They want you to supply the evidence because they said well, you can draw on your own knowledge. Of course you can draw on your own knowledge. What that means is you don't have to check your common sense at the door. If the community standards are—somebody says that community standards are that people have intercourse in the street, your common sense tells you, no. But, nowhere does it say you have got to supply the proof.

"THE COURT: Now, sir, sir, by statute the State is not required to put any proof of that on. I can't sit here. The statute says the State is not required and neither is the Defense required to put on evidence to the community standards. It is for the jury alone.

"MR. HERTZBERG: I understand that.

"THE COURT: Alright, sir. Now, let's not misstate to the jury any more.

"MR. HERTZBERG: Well, I didn't mean to misstate. I suggest to you there is no evidence before you from which you can determine community standards. That is my position." (Tr. 267, 268).

■ The Supreme Court, in its wisdom, has indicated in its latest rulings dealing with proscribed speech, that the community standards to which it refers are local standards, not national, and that such standards are brought to the trial in the minds and experience of the jurors charged with trying the case. *Miller v. California, supra.* In a sense, this marks a return to the early function of a juror.[3] As I understand the High Court, there is no need for a prosecutor to put on evidence of "contemporary community standards". *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Neither is there need for a defendant to put on evidence of contemporary community standards, although, in this case, such evidence was offered and allowed. All the trial court did when he interrupted petitioner's lawyer during closing argument was to remind counsel and the jurors of what the Supreme Court had previously said. There is nothing either erroneous or unconstitutional about that.

■ Petitioner finally asserts in passing that he was deprived of an effective opportunity to assert a challenge for cause as to some of the jurors because the practice of the court was to receive such challenges on the record and in the presence of the prospective jurors. When that practice was made known to petitioner's attorney, he elected not to exercise such for cause challenges, assertedly in reluctance to raise the matter in the presence of prospective jurors. He subsequently had the opportunity to exercise peremptory challenges. He has demonstrated no prejudice resulting therefrom. There is nothing unconstitutional about such practice.

Petitioner has asked this court to issue a certificate of probable cause pursuant to 28 U.S.C.A. § 2253 and Rule 22(b) of the Rules of Appellate Procedure.

Pornography as defined by the Utah statute is not protected speech. As the High Court said in *Paris Adult Theatre v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973):

> but they were selected by an officer of the court instead of by the interested party, and were intended to be impartial." Holmes, *The Common Law,* pp. 262, 63.

---

**3.** "Moreover, a new mode of trial was growing up .... This was the beginning of our trial by jury. It was at first an inquest of the neighbors most likely to know about a disputed matter of fact. They spoke from their own knowledge,

"... We hold that the States have a legitimate interest in regulating commerce in obscene material and in regulating exhibition of obscene material in places of public accommodation, including so-called 'adult' theatres from which minors are excluded." *Id.* at 69, 93 S.Ct. at 2641.

Having examined the record with some care, having read the opinion of the State Supreme Court, having set forth my own reasons above for the lack of merit of petitioner's contentions, having observed that the only substantial constitutional questions relate to the affirmative defense statute which petitioner elected not to use, and having observed that this matter began in May of 1977 and has been examined twice by a committing magistrate, once by a jury, once by a state district court and once by the State Supreme Court and now by this court, and it appearing that the law as it applies to this case is clear and unambiguous, and firmly believing that this interminable matter needs to be brought to a final conclusion, I deny the application for probable cause being of the opinion that there is none for the reasons set forth herein. I further deny the petition for Writ of Habeas Corpus. I will extend the stay of the state court Judgment heretofore entered until January 1, 1981 at high noon to give petitioner an opportunity to ask the Appellate Court for a Certificate of Probable Cause or to make arrangements to surrender himself to the custody of the Sheriff of Salt Lake County to carry out the Judgment of the state court.