James PIEPENBURG, Appellant,

v.

Roger CUTLER, City Attorney of Salt Lake City, Utah, and E. D. Hayward, Sheriff of Salt Lake County, Utah, Appellees.

No. 80–2317.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 17, 1981.

Decided May 21, 1981.

Jerome H. Mooney, Salt Lake City, Utah, for appellant.

Paul G. Maughan, Salt Lake City, Utah (Stanley H. Olsen, Salt Lake City, Utah, with him, on brief), for appellees.

Before SETH, Chief Judge, and DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendant Piepenburg was convicted in the District Court in the State of Utah for three violations of the state statute § 76–10–1204, Utah Code Annotated (1953). This particular provision prohibits the exhibition of pornographic films. The defendant appealed his conviction to the Utah Supreme Court; that Court unanimously confirmed his conviction. *State v. Piepenburg*, 602 P.2d 702 (Utah 1979). Mr. Piepenburg did not pursue the matter to the Supreme Court of the United States. Having exhausted his state remedies, he was at liberty to pursue the cause pursuant to 28 U.S.C. § 2254. He filed a petition for writ of habeas corpus. This was denied in the United States District Court, 507 F.Supp. 1105, and defendant has appealed that judgment. He contends, of course, that his custody is in violation of the Constitution of the United States. This court granted the certificate of probable cause.

On May 27, 1977, a Utah magistrate issued a warrant to seize films which were then being shown at the Gallery Theater in Salt Lake City, Utah. The warrant had an appended affidavit of a police officer who had reviewed the films after buying a ticket at the theater. A preliminary hearing was held June 21, 1977, before the state magistrate.

On November 15, 1977, the Utah District Court ordered the case remanded to the magistrate for a proper preliminary hearing and determination that a crime had been committed. The transcript of that hearing which was held February 1, 1978, suggests some confusion as to the purpose of the remand and what the magistrate was to do. In any event, the films were viewed and the magistrate bound the defendant over for trial. The magistrate had not viewed the films at the first preliminary hearing.

The trial started on May 16, 1978. After the *voir dire* there were challenges for cause, and the defense counsel in the case requested that the challenges should be made out of the presence of the jury in order to avoid animosity between the jurors and the defendant or his counsel. This request was denied. The judge ruled that the procedure in Utah called for the challenge of jurors in open court and in the presence of the jurors. The defense counsel then elected not to challenge for cause, and he contends that two of the potential jurors gave equivocating answers as to whether they could fairly consider the case.

Each side presented its case and closing arguments were heard. There were several objections and interruptions by opposing counsel during each side's argument. Petitioner excepted one interruption in particular; in that one the trial judge admonished defense counsel for misstating the law relative to proof of community standards.

The jury convicted the petitioner on all counts. He was sentenced to pay a fine of $1,000 and to serve six months on each count. The sentences were to run concurrently.

The contentions on review are these:

1. Whether the affirmative defense provision contained in the Utah obscenity statute is unconstitutionally vague.

2. Whether the affirmative defense statute creates impermissible classes and thereby denies equal protection of the law.

3. Whether the magistrate properly refused a request for a prompt adversary hearing on the issue of obscenity of the films.

4. Whether defense counsel was improperly denied the opportunity to challenge the jurors for cause outside their presence.

5. Whether the trial judge's interruption of counsel during closing arguments misstated the law to the jury and reversed the burden of proof from the prosecution to the defendant.

A question which is present in each of the foregoing contentions is whether any violations of defendant's rights are also constitutional violations.

The relevant statute provides that expert testimony is not necessary in order to establish whether the material is harmful to adults or minors or to establish any element of the definition of pornographic, including contemporary community standards. Section 76–10–1208, entitled "Affirmative Defenses" provides that it is an affirmative defense to the prosecution that the distribution of pornographic material was restricted to institutions or persons having scientific, educational, governmental, or other similar justification for possessing pornographic material.

Subsection (3) of § 76–10–1212 deals with search and seizure, hearings upon a claim that material seized is not pornographic, and sets up procedures for such a claim. This is included in one of the subjects of this appeal. That subject is the request for a hearing by the accused on the issue of whether the films are pornographic, and a demand for the return of the films. This all assumes a judicial ruling that the items were not pornographic.[1]

1. The text of the section in question is as follows:

(3) In the event that a search warrant is issued and material alleged to be pornograph-

786

The accused has argued that the provisions in the affirmative defense section referred to above render the statute unconstitutionally vague, and furthermore, that it would not help to sever this section because this would broaden the class of violators after the action alleged to be criminal had taken place. It would make conviction of Piepenburg unconstitutional.

Another complaint against the statute is that it establishes unreasonable classes of people who may distribute the film legally; thereby denying the defendant's class equal protection of the law. In support of the vagueness argument the defendant cites several Sunday closing statute cases which found language similar to that complained of to be unconstitutionally vague. *For example, Skaggs Drug Centers, Inc. v. Ashley*, 26 Utah 2d 38, 484 P.2d 723 (Utah 1971); *State v. Hill*, 189 Kans. 403, 369 P.2d 365, 91 A.L.R.2d 750 (1962).

Two states besides Utah have dealt with challenges to obscenity statutes containing the same provisions as appears in Utah's statutes: *People v. Illardo*, 48 N.Y.2d 408, 423 N.Y.S.2d 470; 399 N.E.2d 59 (1979); *State v. Next Door Cinema Corp.*, 225 Kans. 112, 587 P.2d 326 (1978). *Illardo* held that the statute in question was constitutional, and *Next Door Cinema* held that it was invalid. The *Next Door Cinema* case severed the offending language and held that it neither added to nor detracted from the three classes mentioned. As a consequence of this holding it was possible for the Kansas court to determine that there was no change in the class of people the statute

included. *Illardo* held the language merely grayed the edges allowing the borderline case to assert the defense, a situation upon which the New York court chose to wait for lower application rather than to try to determine the due process issue in a hypothetical situation. Utah in the instant case adopted the reasoning of the New York Court of Appeals. *See State v. Piepenburg*, 602 P.2d 702 (Utah 1979); *State v. Haig*, 578 P.2d 837 (Utah 1978). The Utah Court said:

It cannot be logically argued that these words are vague when such words as "literary", "artistic" and "political" all pass constitutional muster. [Citing *Miller v. California*, 413 U.S. 15 [93 S.Ct. 2607, 37 L.Ed.2d 419](1973)]. The word "similar" is limited to and modified by the three specific terms immediately preceding it (scientific, educational and governmental), and should not be significantly expanded beyond these three basic legitimate reasons for possessing pornographic material.

602 P.2d at 704.

The United States Supreme Court has recognized the importance of state courts being able to authoritatively construe state obscenity statutes. This was in *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). The Court there said:

We made it clear in *Miller* [cites omitted] that our decision was not intended to hold all state statutes inadequate, and we clearly recognize that the existing statutes, as construed heretofore or hereafter, may well be adequate. That recogni-

ic is seized under the provisions of this section, any person claiming to be in possession of this material or claiming ownership of it at the time of its seizure may file a notice in writing with the magistrate within 10 days after the date of the seizure, alleging that the material is not pornographic. The magistrate shall set a hearing within seven days after the filing of this notice, or at such other time as the claimant might agree. At this hearing evidence may be presented as to whether there is probable cause to believe the material seized is pornographic, and at the conclusion of the hearing the magistrate shall make a further determination of wheth-

er probable cause exists to believe that the material is pornographic. A decision as to whether there is probable cause to believe the seized material is pornographic shall be rendered by the court within two days after the conclusion of the hearing. If at the hearing the magistrate finds that no probable cause exists to believe that the material is pornographic, then the material shall be returned to the person or persons from whom it was seized. If the material seized is a film, and the claimant demonstrates that no other copy of the film is available to him, the court shall allow the film to be copied at the claimants expense pending the hearing.

tion is emphasized in our opinion in *United States v. 12–200 Ft. Reels of Film* [413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500]. 418 U.S. 112–13, 94 S.Ct. 2905.

The Supreme Court in *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) said:

> [A] state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts [cites omitted], and its deterrent effect on legitimate expression is both real and substantial.

422 U.S. at 216, 95 S.Ct. at 2276.

**I. The vagueness argument.**

Can it be said that the construction given by the Utah Supreme Court in respect to the Utah statute will have a deterrent effect on legitimate expression?

■ We conclude that it will not. The statute makes what would otherwise be unprotected speech legitimate because of its use and not its content. The statute under attack provides affirmative defenses and allows uses of unprotected speech for legitimate reasons. The speech in its entirety does not as a result become protected by the first amendment. The protection is due to the state's thinking that the selected uses were sufficiently important to outweigh other enforcement considerations. Because obscene material is of the unprotected class, this court is not in a position to examine the statute except under normal standards of vagueness for criminal statutes. *United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). As we review it, the Utah Supreme Court and the U.S. District Court for the District of Utah have applied the standard properly, and accordingly, as against the attack of alleged vagueness the statute is to be upheld.

**II. The equal protection argument.**

■ The defendant concedes that the state has the power to regulate obscene matter, *Paris Adult Theatre v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), and that the statute may make exceptions to a prohibition of such material, *United States v. 12–200 Ft. Reels of Film*, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). It is defendant's position, however, that the classifications which were made by Utah in the statute are not reasonably and substantially related to the purpose of the legislation, but he cites no cases to support his argument. When there are no fundamental right or suspect criteria involved, legislative classifications will be overturned only if no grounds can be conceived which will justify the classification. *Schilb v. Kuebel*, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971). The classifications of the Utah statute are not to be condemned based upon this test. We conclude that the statute should be upheld.

**III.** Did the failure of the magistrate to hold a prompt adversary hearing on the issue of obscenity, which hearing was demanded by the defendant, constitute error of a constitutional dimension?

■ We hold that it did not. The films were seized May 26, 1977. Following an initial appearance some three weeks later a preliminary hearing was held before a magistrate. One of the purposes of this was to determine the issue of "probable obscenity" of the films as required by the statute. Despite alleged requests the magistrate refused to view the films. The defendant contends that the magistrate's refusal violated the principles of *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), and that the error requires reversal of the conviction. We disagree. The magistrate relied upon descriptions of the films given by the police officer who viewed the films May 25, 1977. The officer's account at the hearing was an oral presentation of the same information provided in the affidavit used to secure the warrant. The defendant points to sections of the June 21, 1977, transcript of the preliminary hearing in order to support the assertion that re-

quests were made that the magistrate view the films.[2]

At the completion of the hearing the defendant was bound over for trial. He filed a motion to quash on July 1, 1977. In that motion he asserted that the films were not viewed by the magistrate, and that in order to find probable cause for the belief that they were pornographic they had to be viewed. The defendant prayed in this motion that the matter be remanded to the Salt Lake City Court for preliminary hearing. On August 28, 1977, the defendant filed a motion to suppress in support of which it was argued that "to pass constitutional muster a neutral magistrate must view the film 'as a whole' to decide if it meets the test of obscenity." These motions, including a motion to dismiss, were heard November 11, 1977. On November 15, 1977, the trial judge issued his order denying the motions to suppress and dismiss and ordered that the matter be remitted back to the Salt Lake City Court for a preliminary hearing to determine that a crime was committed.

A second preliminary hearing as ordered by the remand was held thereafter on February 1, 1978. That transcript reflects some confusion as to the purpose of the remand, and also as to whether the magistrate had jurisdiction to hear it. Defense counsel was under the impression that the hearing was the adversary hearing on ob-

scenity *vel non*, and objected to it because it had been delayed so long. On the other hand, the prosecution thought it was simply a normal preliminary hearing and, therefore, was uncertain as to what was to be done differently than what had already been done. He argued that there was a distinction between a preliminary hearing and a hearing on obscenity, and that the prosecution was unaware of any request by the defendant for the Utah statutory adversary hearing on the matter of obscenity. Section 76-10-1212(3) U.S.C. (1953).

Regardless of the confusion, the full films were reviewed by the magistrate, and once again, the evidence was ruled sufficient and the defendant was again bound over for trial. Thereafter, the defendant renewed his motions to dismiss and suppress, which were denied. At the trial the jury was instructed to determine the issue of obscenity, with no reference being made to the determination made at the second preliminary hearing.

The defendant here argues that both the Utah statute and the principles set forth in *Heller v. New York, supra,* require a prompt adversary hearing on the issue of obscenity. His further contention is that failure to provide the hearing, as a consequence of failing to comply with the provisions of the statute, was itself unconstitutional. The defendant is a little vague as to what part of the constitution applies, but

2. MR. LUBECK: Your Honor, I object to anything else (the police officer) saw relating to (the contents of the films). We're talking about Rule 70, I think as rules of evidence. We're talking about the contents of the writing which are at issue as writing as a defined material, and includes films. I would object to any testimony from the officer's side, as the best evidence is the film itself.

THE COURT: I don't think they construe film as writing in the Rule, counsel.

\* \* \* \* \* \*

MR. LUBECK: . . . Secondly, I would move to dismiss on the basis that the State has failed to show there's probable cause to this magistrate, to this court, that there's reason to believe that the movies viewed on that occasion were pornographic, because that's the word used in the State law rather than obscene... Well, Officer Lewis testified that it took about 30 minutes to describe

something that took three and a half hours to see. I objected to that procedure on the basis that it wasn't the best evidence rule— when something is at issue, the best evidence being a writing itself; and I contend that a motion picture is a writing.

\* \* \* \* \* \*

And, therefore, unless the prosecuting authority would show one of the exceptions, the movie itself has to be shown.... [T]he whole gist of the case is whether or not the whole movie is pornographic. I'm just contending that the procedure whereby a witness described in 30 minutes what took three and a half hours can't possibly inform anyone what it's about.

\* \* \* \* \* \*

Well my motion is to dismiss on the basis the state has failed to show sufficient cause to believe that the movies are pornographic.

we can assume that it is a due process contention; that it supports an exclusionary principle applicable to failure to give a prompt review of the obscenity matter.

The prosecution's argument is that under the statute, § 76–10–1212(1) and (2), U.C.A. (1953), the warrant issuance is the point at which the magistrate is required to make a searching examination of whether probable cause exists to believe that the material is obscene and that an affidavit is a proper basis for such a determination. The argument continues that there is a distinction between a preliminary hearing and the statutory requestable hearing to determine the issue of obscenity. The former occurs automatically and focuses on the individual in order to determine that a crime has been committed and that the defendant has committed it. The latter is special and is given only upon request and focuses on the material to determine its probable obscenity. The distinction assumes the adversary hearing is only for the protection of first amendment rights.

The prosecution states that the defendant did not make a written request for the adversary hearing within ten days of the seizure as required by the statute, and that any delay in the hearing was acquiesced in without objection or request by the defendant. In sum, the issues are whether the defendant was denied any constitutional right by the failure to view the films promptly after seizure; whether such failure can be remedied by a later hearing at which the films are viewed; and what the consequences are of a failure to meet the guidelines set out in *Heller v. New York, supra.*

In dealing with these obscenity cases it is important to distinguish between the prior restraint cases where there is injunction against distribution, and the cases in which there is criminal prosecution after distribution. The burden in the prior restraint case is much heavier, due to the fact that expression is presumed protected by the first amendment—and prevention is perhaps a more preferred position. *Vance v. Universal Amusement Company, Inc.,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (J. White dissenting); *Heller v. New York, supra; Bantum Books, Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). There is also a distinction to be drawn between seizing films for the purpose of destroying them and seizing films to preserve them as evidence for criminal prosecution. *Heller v. New York, supra.* In *Heller* the court was concerned with testing the validity of a warrant and an alleged unconstitutional seizure of a film because of failure to hold a prior adversary hearing on the issue of obscenity. The court rejected the necessity for a prior hearing and outlined procedures for seizures to be constitutionally permissible.[3]

When applying the *Heller* principle, promptness and the circumstances of preliminary hearings are to be looked to. As the portions of transcript and pleadings show, the defendant did request that the magistrate view the films at the first hearing. Not, however, until the motion to suppress was filed on the 29th of August was *Heller* mentioned as authority for requiring that the films be viewed. Reference to § 76–10–1212. U.C.A. did not appear until the preliminary hearing of February 1, 1978. Thus, while it is clear that the re-

---

**3.** These procedures are as follows:

If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt (fn.) judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible. * * *.

(fn.) By 'prompt' we mean the shortest period compatible with sound judicial resolution. [Cites omitted].

The necessity for a prior judicial determination of probable cause will protect against gross abuses, while the availability of a prompt judicial determination in an adversary proceeding following the seizure assures that difficult marginal cases will be fully considered in light of First Amendment guarantees, with only a minimal interference with public circulation pending litigation.
413 U.S. at 492–93, 93 S.Ct. at 2795.

quest was made, it was unsupported. Authority supporting the request or reason for the request was left out. So, the purpose is vague at best until the second preliminary hearing. Hence, a question exists as to whether the magistrate and trial judge were on notice as to the nature of the demand of the defendant. The court must be made sufficiently aware of the specific demand being made; that it should not be made just as a matter of course in order to have a legal point to argue when the time comes. But once the demand is clear it is not appropriate to test prior proceedings to see if the demand was met. In the case at bar the defendant did not present authority or reasons for the demand that the films be viewed until at least the 29th of August, and promptness was not made an issue by the defendant until the February 1, 1977, hearing. Until that hearing all of the defendant's argument was directed to the question of showing that a crime was committed. The prosecution was the party to first properly frame the issue of promptness in its answer and memorandum to defendant's motion to suppress evidence on November 1, 1977. At that late date the defendant still made no proper presentation of his demand for promptness. *Heller* requires only that a prompt hearing be given on request of any interested party. In other words, request is important and it cannot here be said that the timing of the hearing was not within the demands of the *Heller* decision.

■ The defendant is in a poor position to argue, in view of the vagueness of his demands, that a second hearing did not remedy the failure to view the films at the first hearing. The preliminary hearing is not held primarily for protection of first amendment rights, but rather to determine probable cause to believe a crime has been committed and that the defendant was the one who committed it. The protection of the first amendment rights is not intended to be covered by the hearing, but it does become a by-product of it. The obscenity is the crux of the crime of distributing the material, and the issue of obscenity must be tested by the standards of *Miller v. California, supra.* Those standards require that the material be regarded as a whole. The judicial officer cannot rely on a police officer's judgment or description of the material in making a determination as to its obscenity. *Heller v. New York, supra; Marcus v. Search Warrants of Property,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

The statutory procedure here in question incidentally protects first amendment rights. Nevertheless, a failure to carry out the procedure at a given time should not be regarded as fatal to the conviction or the introduction of the films as evidence. It is fatal to the preliminary hearing which goes to whether the crime was committed. The remedy for a flawed hearing is to repair it by holding another hearing, and this remedy was followed. Any alleged first amendment infringement must be raised by an interested party. In the present case no one made a complaint concerning this aspect of the situation. Had they done so, a proper remedy would have been to order a copy of the film or the film itself returned (if no copy was possible) so that it could be distributed pending a final determination of its obscenity. *Heller v. New York, supra; United States v. Sanders,* 597 F.2d 63 (5th Cir. 1979); *United States v. Cangiano,* 464 F.2d 320 (2nd Cir. 1972), *vacated on other grounds,* 413 U.S. 913, 93 S.Ct. 3047, 37 L.Ed.2d 1023 (1974).

The procedures of the Utah courts were proper under the circumstances and do not require that the conviction be set aside.

IV. Were the defendant's constitutional rights violated by the trial court denying his counsel's request to enter challenges for cause outside the presence of the jury?

■ We conclude that this was not a constitutional violation, inasmuch as it is a matter which is within the discretion of the trial court. The special circumstances which are advanced in support of the position are these: Several potential jurors were members of the Church of Jesus

Christ of the Latter Day Saints. About the time of the trial the church leadership had been engaged in an effort directed to the membership to openly oppose business establishments like the Gallery Theater. Prior to the trial there had been several incidents of picketing such establishments by church members. Several of the potential jurors were aware of this picketing, but those who had participated in any way, or who had family who had, were excused. The defendant-petitioner contends that the church's stand against obscenity influenced members of the jury who were members of the church. The petitioner points to two jurors in particular using their answers on *voir dire* to support his argument. There had been a problem of improper influence of jurors in the previous case against Piepenburg, and the petitioner was concerned that it might happen again.

The argument is that defense counsel was in a difficult position because he would have to challenge jurors because of their connection with the church, and he thus risked alienating church members who were not challenged and remained in the jury box. So, after a request to challenge outside the presence of the jury was denied, the petitioner made a tactical decision not to challenge. Peremptory challenges were taken and the jury was selected.

The *voir dire* shows a thorough examination of the group and of several individuals on the jury on this very issue. Both of the jurors whom the petitioner wished to challenge were asked on *voir dire* if there was anything in the church activity which they felt would interfere with their ability to be fair and just jurors and return a verdict based on the law as the judge instructed them, and the facts as the jurors found them. Both replied, "I don't think so." The petitioner maintains that the answers given by these jurors was not good enough to assure impartiality. He maintains that if he had been allowed to challenge for cause outside the hearing of the other jurors he could have shown bias. Only one of these two jurors served on the panel, and petitioner did not state for the record the grounds for the unpursued challenges.

However, it is pretty easy to surmise what the grounds are. They derive from the fact that members of the church had already taken a position on this particular question.

The answer to the arguments is that, after all, petitioner was not denied an opportunity to challenge, and he must have weighed the exercise of the challenges in open court against the possibility that if he did not exercise the challenges these jurors would be the triers of the facts. His decision not to exercise the challenges for cause would indicate that he was less worried about their sitting on the panel than he was about exercising the challenges. We do not consider the possible right to privately challenge to be constitutional.

The law is fairly well settled that the method of *voir dire* and challenging in United States District Courts is subject to the discretion of the trial judge. *United States v. Evans*, 542 F.2d 805 (10th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977); *United States v. Davis*, 583 F.2d 190 (5th Cir. 1978) (both of the cases just cited were pretrial publicity cases); and the Utah Supreme Court has held to the same effect, *State v. Piepenburg*, 602 P.2d 702 (Utah 1979); *State v. Musser*, 110 Utah 534, 175 P.2d 724 (1946), *vacated and remanded on other grounds; Musser v. State of Utah*, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1947).

Petitioner cites *Swain v. State of Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) as recognizing that challenge for cause may incur the hostility of a juror, but that case was discussing the importance of peremptory challenges, and did not suggest challenges for cause be carried out outside the presence of the other jurors. It certainly does not say that this is necessary in order to satisfy the demands of the Constitution of the United States. Inasmuch as there has been a failure to state grounds for challenge, and there has been a failure to demonstrate prejudice, the procedure followed by the Utah court must be upheld against the contention of the petitioner. After all, petitioner did have a choice, and

he did not choose to exercise it, and so he is bound by his choice.

## V. The Intervention of the Judge during closing arguments.

The final contention of the petitioner is that the trial judge interrupted his closing argument, and in doing so misstated the law and shifted the burden of proof from the prosecution to the defendant. It came about in this way:

In his closing argument counsel stated to the jury:

"Now, as I told you—and this is very important—they have got to prove community standards or they haven't made their case. And I suggest to you nobody was qualified, not one scintilla of evidence came from that stand that supports their case. Not one person even gave an opinion that it violated community standards. The burden of proof is on them and they want you to guess. They want you to supply the evidence because they said, 'well, you can draw on your own knowledge.' Of course you can draw on your own knowledge. What that means is that you don't have to check your common sense at the door. If the community standards are—somebody says the community standards are that people have intercourse in the street, your common sense tells you, no. But, no where does it say you have go to supply the proof. THE COURT: Now, sir, sir, by statute the State is not required to put any proof of that on. I can't sit here. The statute says the State is not required and neither is the defense required to put on evidence to the community standards. It is for the jury alone.
MR. HERTZBERG: I understand that.
THE COURT: All right, sir. Now, let's not misstate to the jury any more.

Mr. Hertzberg said that he did not mean to misstate, but that he was suggesting that there was no evidence before the jury from which to determine community standards.

The petitioner also contends that the instructions are in conflict. One of them advises that neither the prosecution nor the defense is required to introduce expert witness testimony as to whether the material or performance is or is not harmful to adults or minors or is or is not pornographic or, as to any element of the definition of pornographic, including contemporary community standards. Several of the jury instructions, four to be exact, contained statements to the effect that the state must prove beyond a reasonable doubt that the material affronts contemporary community standards.

The Supreme Court's position is that when the material itself is introduced into evidence, the jury may judge for itself, using its own sense of community standards, whether the material is obscene; that is, the jury brings to the trial the community standard and no evidence is necessary to establish it. *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977); *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Kaplan v. California*, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). The petitioner concedes these principles, but argues that no where has the court stated that the responsibility for proving every element of the offense has been removed from the prosecution. But it does not follow from petitioner's premise this that the trial court shifted the burden of proof. Petitioner's counsel stated that there was no evidence from which community standards could be determined. In a strict sense that was true, but it was misleading. The proof of the material itself and the knowledge of the jurors—their own reaction—reflects the community state of mind, and the community standards.

The burden of proving the community standards necessarily remained with the state, since the material had to be presented to the jury and only then could the jurors draw on their own knowledge to make the determination as to whether the material violated the community standards. The comments of the trial judge do not rise to the level of comments upon the evidence as asserted by the petitioner. The judge was responding to the misleading statements by defense counsel as to the law, and it was an effort on the part of the judge to correct the statements which were given. This did

not reflect bias on the part of the judge in favor of either the prosecution or the defense. Finally, at the conclusion of the arguments the judge said that he had made a statement in the middle of Mr. Hertzberg's argument as to the law and, as required by law:

I have had it typed out in writing. I am going to read to you what I have marked as 20–A:

In the trial of a pornography case, neither the prosecution nor the defense shall be required to produce expert testimony as to whether the material or performance is or is not harmful to adults, or is or is not pornographic, or as to any element of the definition of pornographic, including contemporary community standards.

We say again that the trial judge did not shift the burden of proof from the prosecution to the defense. Accordingly, there was no denial of due process which would require the granting of Piepenburg's petition.

We are of the opinion that none of the points advanced on behalf of the petitioner are meritorious. After all, it is essential that it be shown in this proceeding that the trial was conducted in an unconstitutional manner. We do not agree that it was.

The judgment discharging the peremptory writ is affirmed.