WEGMAN'S FOOD MARKETS, INC., Appellant, v STATE OF NEW YORK et al., Respondents.

Fourth Department, July 10, 1980

### APPEARANCES OF COUNSEL

*Wegman, Mayberry, Burgess & Feldstein (Richard S. Mayberry* of counsel), for appellant.

*Thomas G. Conway (Dennis P. Buckley* of counsel), for respondents.

### OPINION OF THE COURT

CARDAMONE, J. P.

In this declaratory judgment action appellant, Wegman's Food Markets, Inc. (Wegman's), seeks a declaration that New York's Unit Pricing Statute, former section 193-h of the Agriculture and Markets Law (repealed and renumbered as section 214-h [L 1977, ch 874, §§ 1, 3]) is unconstitutional. Appellant further seeks to permanently enjoin defendant-re-

spondent J. Roger Barber, Commissioner of the Department of Agriculture and Markets, from enforcing the statute.

Designed to facilitate comparative pricing by consumers, section 193-h of the Agriculture and Markets Law, enacted in 1974, requires certain retailers to provide unit price information to their customers. Only food stores, or those stores "selling primarily food at retail", which are not primarily selling food for consumption on the premises, fall within the reach of the statute. Among food stores there is an exclusion for those engaged in a specialty trade (e.g., bakeries or delicatessens) which the commissioner determines by regulation to be inappropriate for unit pricing (§ 214-h, subd 2, par b). Stores with annual gross sales of less than two million dollars are also excluded. Drug stores which compete with appellant, such as Rite-Aid, CVS Pharmacy and Fay's Drugs, are exempted from the unit pricing requirement since they are not engaged in "selling primarily food". The statute originally covered only three categories of consumer commodities commonly found in food stores: food, paper products and cleansing agents. Appellant did not contest this regulation and, in fact, had been providing its customers with unit pricing information on these items even before the enactment of section 214-h. In 1976 the statute was amended (L 1976, ch 420) by adding a fourth category of consumer commodities subject to unit pricing: "non-prescription drugs, female hygiene products and toiletries" (§ 193-h, subd 2, par a, cl [4]). Wegman's sells up to 5,000 items known as health and beauty aids, which include many of these commodities. It claims that because this latest unit pricing requirement will increase its cost of doing business and injure its competitive position the statute violates due process. Since its major rivals in home health and beauty aid sales—large drug and variety stores—are not similarly subject to the regulation, Wegman's argues that it also violates its constitutional right to equal protection. Finally, it alleges that the definitions in the statute are unconstitutionally vague.

The record before us reveals that Wegman's operates 32 retail stores which sell food, related grocery products and general merchandise. It has voluntarily provided a computerized unit price information system in all of its stores since 1972. However, in order to comply with the amended version of the unit pricing statute, it will have to design and install a new computerized unit price information disclosure system.

Additional difficulties in this task result from the fact that some of these items are not warehoused by Wegman's, but are delivered directly to the stores. Because Wegman's currently does not maintain data concerning price and price changes, it claims that it will incur additional expenditures to comply with the amended version of the statute. The wholesalers who supply these items are responsible for inventoring and pricing them.

Respondents rely on various documents to demonstrate that the statute serves a legitimate purpose. The legislative enactment was intended to aid consumers in protecting the buying power of their food dollars. Based on research studies considered by the Legislature, unit pricing is effective in reducing price differences, making price increases more obvious to the purchaser and discouraging manufacturers from disguising price increases by reducing package size (NY Legis Ann, 1974, p 276). It is estimated that unit pricing of food products can save a shopper approximately 10% in food bills. The Legislature also found that the cost of implementing a unit pricing system would not exceed $2,500 per year and that this cost is relatively constant, regardless of the size of the store. As a result, unit pricing would impose a harsh burden on the exempted small store, but not an unreasonable burden on a large or medium-sized store. The 1976 amendment was designed to complete the purpose of the original enactment by "bringing under its coverage an important category of items found in most supermarkets" (NY Legis Ann, 1976, pp 71-72). The Legislature found that since these products come in a variety of shapes and sizes, comparison shopping is rendered difficult in the absence of unit pricing.

■ With respect to Wegman's initial argument, it is well settled that the due process clause affords little protection from State regulation in the economic sphere. As long as the Legislature selects means which are reasonably calculated to serve a proper governmental purpose, the requirements of due process are satisfied. Only a minimal level of rationality is necessary to save an economic regulatory statute from constitutional attack on due process grounds, or, to put it another way, only where the State interferes with a citizen's property without "rhyme or reason" does a deprivation of due process occur (Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541). As the Supreme Court stated in Williamson v Lee Opt. Co. (348 US 483, 488) "[t]he day is gone when this Court uses the

Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought [citations omitted]". Moreover, the one challenging a statute on these grounds must overcome a heavy presumption of constitutionality (*Montgomery v Daniels,* 38 NY2d 41, 54). Applying these standards to the unit pricing statute involved in this case, it is apparent that appellant has not met its burden of demonstrating unconstitutionality. Wegman's recognizes that unit pricing is a useful and helpful service and concedes that it is "logically and factually related to the valid public purpose of providing consumers with comparison shopping data". The Legislature could reasonably have concluded that unit pricing promotes accurate price information and enables the shopper to reduce his expenses. Further, the Legislature found, based upon research, that the costs in complying with the statute would be minimal. The requirement of unit pricing does not, therefore, constitute an unreasonable interference with appellant's business activities in violation of its right to due process.

Wegman's principal argument is that the statute violates its right to equal protection because it treats food stores and other stores, selling identical products, differently. It agrees that the statute, as originally enacted, was valid, but contends that the 1976 amendment, adding the fourth category of consumer commodities, rendered it constitutionally defective. It argues that the original validity of the statute stemmed from the fact that all of the items which food stores were required to unit price were items sold primarily by food stores. Thus, it made sense to require only food stores to unit price these items. However, the added items, "non-prescription drugs, female hygiene products and toiletries", are equally available to prospective purchasers in unregulated retail stores. In fact, as appellant points out, it derives less than 10% of its business from the sale of these items, while drug stores and general merchandise stores concentrate nearly exclusively on these items. Appellant concludes, therefore, that the statutory classification is underinclusive and arbitrary.

Equal protection requires that all those similarly situated be treated alike. A determination of whether a legislative classification includes "all persons similarly situated" must be

examined in light of the purpose of the classification and, unless a fundamental interest or a suspect classification is involved, courts traditionally allow the Legislature considerable leeway (see Developments in the Law—Equal Protection, 82 Harv L Rev, 1065, 1076 *et seq.*). An economic regulation challenged on equal protection grounds is presumed constitutional and requires only that the challenged classification be rationally related to a legitimate State interest *(New Orleans v Dukes,* 427 US 297, 303). It is sufficient that the Legislature acts upon its perception that a given wrong needs to be remedied and that the measure it adopts might be thought a rational way to correct it *(Williamson v Lee Opt. Co.,* 348 US 483, *supra; People v Illardo,* 48 NY2d 408, 417). If the classification is "reasonable" it may not be challenged successfully simply because "in practice it results in some inequality" *(Dandridge v Williams,* 397 US 471, 485, citing *Lindsley v National Carbonic Gas Co.,* 220 US 61, 78). In the area of economic regulation, only "invidious discrimination, the wholly arbitrary act" runs afoul of constitutional guarantees *(New Orleans v Dukes, supra,* at pp 303, 304). It was incumbent upon appellant to show that there was no rational basis for distinguishing between sales of home health and beauty aids in food stores and sales of these items elsewhere.

■ Unit pricing is unquestionably a useful requirement. There is benefit in requiring the items in the fourth category to be unit priced in food stores. It may be wise and beneficial also to extend this requirement to those other stores which are currently exempt from regulation. But it is not the function of a court to sit as a superlegislature to review the wisdom of a legislative policy determination *(New Orleans v Dukes, supra,* at p 303; *People v Illardo, supra,* at p 418). An often-quoted statement of the Supreme Court in *Williamson v Lee Opt. Co., supra,* at p 489, is particularly appropriate: "The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. * * * Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. * * * The legislature may select one phase of one field and apply a remedy there, neglecting the others [citations omitted]". Food stores are different because they sell food. The record indicates that in 1975 the American con-

sumer spent 13% of his disposable income for food to be consumed at home. Fifty-six percent of this food was purchased in supermarkets. These statistics support the legislative finding that the vast bulk of consumer expenditures occurs in stores subject to unit pricing and that it is there that the consumer needs the most protection. In order to prove its case appellant had to show that this finding is wrong and that the same degree of protection is needed in drug stores and variety stores. Appellant has provided no economic data to overcome the basic premise behind this legislation— people spend a significant amount of their consumer dollar in supermarkets—and thus has failed to meet its burden of proof. Simply stated, the legislative determination to include only food stores in the regulatory scheme, even though underinclusive, is not unreasonable.

■ Turning to Wegman's final argument, Special Term held that the definitions contained in the unit pricing statute are sufficiently precise to satisfy the requirements of due process. We agree. Due process requires a sufficient degree of precision in legislation to provide "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" *(United States v Harriss,* 347 US 612, 617). This requirement also protects against arbitrary and discriminatory enforcement by establishing " 'boundaries sufficiently distinct' for police, Judges and juries to fairly administer the law" *(People v Cruz,* 48 NY2d 419, 424). However, the Constitution requires only reasonable precision *(People v Illardo, supra,* at p 414); statutes are not automatically invalidated on the ground of vagueness simply because of difficulty in determining whether certain marginal activities fall within the scope of the statutory regulations *(United States v National Dairy Corp.,* 372 US 29, 32; *United States v Harriss, supra,* at p 618; *United States v Petrillo,* 332 US 1, 7). An interpretation which supports the constitutionality of the legislation is preferred *(United States v National Dairy Corp., supra,* at p 32).

Judged by these standards, the term "food stores" is not so vague as to render the statute violative of due process. Appellant's main objection to the definition is that the words "selling *primarily* food" are unduly vague (emphasis added). It contends that, based on the amount of retail floor space devoted to the sale of nonfood items, its superstores are not engaged primarily in the sale of food. Its belief that these stores are not "food stores" as defined in the statute, however,

is irrelevant. The issue is whether the statute itself is vague. Wegman's argument, which focused on floor space devoted to selling food, is misplaced. The Commissioner of the Department of Agriculture and Markets defined food stores in terms of a percentage of gross sales. Under the unit pricing statute, the commissioner has authority to promulgate regulations to effectuate the section and pursuant to that authority he issued a regulation which clarified the definition of food stores by providing that any store having gross sales in excess of $2,000,000 in which the total dollar volume of food sales constituted 50% or less of the total dollar volume is not subject to the unit pricing requirements unless the total food sales alone is equal to or greater than $2,000,000 (1 NYCRR 345.5 [b]). This interpretation provides a sufficient degree of clarity to satisfy the requirements of due process. Wegman's claim of vagueness extends to the definition of "consumer commodities" and, specifically, to the term "toiletries" included within it. It notes that the term "toiletries" is not a term of art within the industry. We agree with Special Term that the term's dictionary meaning "articles used in bathing, dressing and grooming", is sufficiently precise. Other retailers use the term in advertising their products. A viable claim of denial of due process is forestalled when the regulation is drafted with reasonable precision *(United States v National Dairy Corp., supra,* at p 32).

The order should be affirmed. Section 214-h of the Agriculture and Markets Law, as amended (subd 2, par a, cl [4]) by chapter 420 of the Laws of 1976, is declared constitutional and respondent, Commissioner of the Department of Agriculture and Markets of the State of New York, may not be enjoined from enforcing that statute against appellant.

SIMONS, CALLAHAN, DOERR and MOULE, JJ., concur.

Order unanimously affirmed, without costs, and judgment entered in favor of respondents, in accordance with opinion by CARDAMONE, J. P.