OPINION OF THE COURT
Richard W. Wallach, J.
Motion by plaintiff Mid-Manhattan Independent Merchants Association (Association), for a preliminary injunction restraining defendant City of New York and its commissioner of the Department of Consumer Affairs (DCA) from implementing and enforcing Local Law No. 74 of 1982 on the ground that it is unconstitutional is denied. Plaintiff contends that this legislation, which requires a narrowly defined class of retailers in midtown Manhattan to apply for a special license to do business (and thereby subject them to more stringent regulation than their larger and better established brethren), is unconstitutional in that it deprives the Association’s members of equal protection of the laws within the meaning of the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York State Constitution. This and other related claims of plaintiff, when viewed in the light of well-settled decisional law (see, e.g., People v Illardo, 48 NY2d 408, 417), clearly lack that likelihood of ultimate success in the action required to sustain an injunction pendente lite (Metz v People, 73 Misc 2d 219).
*389 The law is directed against a familiar species of store located in the heart of Manhattan — an area that plays host not only to natives but also to a massive tourist influx. In the class sought to be protected is the eager but unwary shopper, foreign or domestic, who succumbs to the blandishments of the impossible bargain only to suffer shock and grief when the dismal truth about the purchased article comes to light. In opposition to this motion, DCA has made a convincing demonstration of the need for regulation of this type of operation with multiple instances of overcharging, deception and outright fraud. The threat of continuing damage to the city’s important tourist industry has been fully demonstrated.
The main thrust of the Association’s constitutional attack is upon the allegedly arbitrary and discriminatory method by which the proposed class of licensees is defined. The law applies only to retail stores (a) with less than 10,000 square feet of display space; (b) which sell any 1 of 5 enumerated items, namely, audio or video equipment, calculators, cameras or appurtenant photographic equipment, or “Persian” or “Oriental” rugs; and (c) which are located in Manhattan in the midtown area bounded by 30th Street on the south, 59th Street on the north, 8th Avenue on the west, and Lexington Avenue on the east. Under this definition the potential licensee is fixed in a crystaline block of three dimensions, each of which has been validated as a constitutional metwand. Use of the physical character of the retail operation (City of New Orleans v Dukes, 427 US 297), its geographical location (McGowan v Maryland, 366 US 420); and the type of merchandise sold as interrelating with the first two (Wegmaris Food Markets v State of New York, 76 AD2d 95) have all survived the equal protection test.
The chagrin of plaintiff’s membership is not limited to realization that Macy’s and Bloomingdales are not slated for inclusion in the licensing scheme. “Arbitrariness” is to be found, argues plaintiff, in the fact that the store on 60th Street, or with 10,001 square feet, will escape the regulatory net by one block or one foot. So, too, will those who sell candy, hardware and antique furniture. But as noted in City of New Orleans, v Dukes (supra, p 303): “Legislatures *390 may implement their program step by step, Katzenbach v. Morgan, 384 U. S. 641 (1966), in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations.”
Furthermore, in the area of economic regulation the challenger bears a heavy burden in overcoming the strong presumption of legislative constitutionality, and only a “minimal level of rationality” need be proffered to satisfy judicial scrutiny. As stated in Wegman’s Food Markets v State of New York (76 AD2d 95, 98): “it is well settled that -the due process clause affords little protection from State regulation in the economic sphere. As long as the Legislature selects means which are reasonably calculated to serve a proper governmental purpose, the requirements of due process are satisfied. Only a minimal level of rationality is necessary to save an economic regulatory statute from constitutional attack on due process grounds, or, to put it another way, only where the State interferes with a citizen’s property without ‘rhyme or reason’ does a deprivation of due process occur”.
Here DC A has made far more than a minimal showing. Of course the fate of a law may be far different when the legislative intrusion impacts upon enterprises involved in dissemination of speech or ideas which are properly cloaked with the protective mantle of the First Amendment (cf. Natco Theatres v Ratner, 463 F Supp 1124; Club Winks v City of New York, 99 Misc 2d 787). Manifestly, that kind of problem is not presented in this case. Nor has plaintiff made an even colorable argument that by diminishing unfettered (i.e., no holds barred) competition Local Law No. 74 is in potential violation of the antitrust laws. While it is true that municipalities may now be subject to the Sherman Act (US Code, tit 15, § 1 et seq.) (Community Communications Co. v City of Boulder, 455 US 40), the absence of even an allegation of conspiracy defeats this contention (Nelson Radio & Supply Co. v Motorola, 200 F2d 911, cert den 345 US 925; Theatre Enterprises v Paramount Film Distr. Corp., 346 US 537). The purpose of the Sherman Act and its progeny was not to re-enact the law of the economic jungle nor to enshrine the common-law *391 rule of caveat emptor. .Plaintiff’s other objections are similarly lacking in merit.
Accordingly, plaintiff’s motion is in all respects denied.