OPINION OF THE COURT
Thomas W. Keegan, J.
Originally there were several declaratory judgment actions throughout the State challenging the constitutionality of section 803 of the Retirement and Social Security Law. Board of Coop. Educ. Servs. v New York State Teachers’ Retirement Sys. (BOCES) was brought in Albany County, and assigned to this court from the outset. There is a motion pending before this court seeking to consolidate BOCES with Matter of Bernstein v Board of Coop. Educ. Servs. (Bernstein) and Board of Educ. of *588 Haverstraw-Stony Point Cent. School Dist. v State of New York (Haverstraw). Bernstein is a CPLR article 78 proceeding pending before the Hon. George Ceresia here in Albany County. Haverstraw was transferred from Rockland County to Albany County and remains pending before the Hon. Victoria Graffeo. The plaintiffs in Haverstraw move for injunctive relief before Justice Graffeo and oppose the motion to consolidate before this court. Bayport-Blue Point Union Free School Dist. v New York State Teachers’ Retirement Sys. (Bayport) and Town of Brookhaven v New York State Employees’ Retirement Sys. (Brookhaven) were originally venued in Suffolk County, later consolidated and transferred to Albany County, and assigned to the Hon. Harold J. Hughes. These latter declaratory actions also seek preliminary injunctive relief. Prior to the consolidation of these two actions, the plaintiffs in Bayport moved for summary judgment on their claim for declaratory relief. Subsequent to their consolidation and transfer, defendants cross-moved for summary judgment.
A temporary restraining order was issued in the Bayport action in June of 1995, and in the Brookhaven action in January of 1996.
By stipulation and order of the Hon. Harold J. Hughes dated September 12, 1996, the BOCES and the consolidated Bayport and Brookhaven cases have been joined for trial and assigned to this court for joint disposition. Because the plaintiffs in Haverstraw would not stipulate to the joinder of these actions, and the Bernstein proceeding involves the application of Retirement and Social Security Law § 803, BOCES’ motion to consolidate the Haverstraw action and the Bernstein proceeding with the BOCES action is denied.
As a preliminary matter, the court concludes that plaintiff school districts, BOCES, and the Town of Brookhaven have the capacity to bring suit. The school districts allege that Retirement and Social Security Law § 803 requires them to make gifts of public funds and to incur debts without any corresponding benefits, contrary to the express prohibitions of article VIII, §§ 1 and 2 of the State Constitution, and thus argue "that if they are obliged to comply with the State statute they will by that very compliance be forced to violate a constitutional proscription”. (Matter of Jeter v Ellenville Cent. School Dist., 41 NY2d 283, 287.) Consequently, they claim, and this court agrees, that their challenge falls within one of the well-settled exceptions whereby municipal corporations of the State may challenge the constitutionality of a legislative enactment.
*589 Section 803 of the Retirement and Social Security Law allows public employees who are currently members of one of the State retirement systems to backdate their membership to the date they first became eligible for entrance into the retirement system. In most instances, this retroactive membership provides the employees with significantly enhanced benefits.
In order to qualify for retroactive membership under section 803, an employee still in active public service must: (1) file a written application for membership within three years of October 24, 1993, the effective date of the statute; (2) demonstrate that s/he "served continuously in a position or positions which would have entitled the member to join a public retirement system”; and (3) have "the employer who employed such member at the time he or she was first eligible to join a public retirement system file [ ] with the retirement system an affidavit stating that the relief sought is appropriate”. (Retirement and Social Security Law § 803 [b] [1], [2], [3].)
As the law was originally enacted, once the determination was made that an employee was eligible for retroactive membership, section 803 imposed the full cost of the enhanced benefits on "the employer who employed such member at the time he or she was first eligible to join a public retirement system”. (Retirement and Social Security Law § 803 [former (e)].) However, effective August 9, 1995, section 803 was amended to allow a public retirement system to distribute a percentage of the cost associated with retroactive membership among all participating employers. The amendment applies only when more than one employer was involved, and "socializes” the cost among all participating employers based on the difference between the employee’s salary level of the position held with the original employer and the salary level of the position held with the current employer. In addition, the amendment applies only to costs resulting from employer affidavits received by a public retirement system on or before June 1, 1995. (Retirement and Social Security Law § 803 [e] [2]; L 1995, ch 683.)
Acts of the Legislature are entitled to a strong presumption of constitutionality. (Schulz v State of New York, 84 NY2d 231.) "A finding of unconstitutionality should not be lightly undertaken by courts of first instance. 'A statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction unless such conclusion is inescapable. Courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare *590 cases involving life and liberty, and where the invalidity of the act is apparent on its face’ [citation omitted].” (Comiskey v Arlen, 55 AD2d 304, 307, affd 43 NY2d 696.)
Plaintiffs first argue that section 803 violates the State Constitution because the imposition of the full cost of retroactive membership upon them as "first employers” requires them to make an unlawful gift of public funds. Article VIII, § 1 of the New York State Constitution forbids any "county, city, [or] town * * * or school district [from giving or loaning] any money or property to or in aid of any individual”.
In response, defendants cite a 1951 amendment to the State Constitution which provides in relevant part, "nothing in this constitution contained shall prevent the legislature from providing for * * * [an] increase in the amount of pensions of any member of a retirement system of the state, or of a subdivision of the state”. (NY Const, art VII, § 8 [2].)
Plaintiffs concede that the amendment allows for increased benefits but not retroactive membership in the retirement systems. To support this proposition, plaintiffs rely on a strained interpretation of a 1902 case.
In Matter of Mahon v Board of Educ. (171 NY 263), the Court of Appeals ruled that the granting of pension benefits to teachers who had retired before the establishment of a pension system was an unconstitutional gift of public funds. The Court held that "[e]xtra compensation is compensation over and above that fixed by contract or by law when the services were rendered.” (Supra, at 266-267.)
As defendants argue, the situation in Mahon (supra) is clearly inapposite to the situation presented here. To begin with, section 803 only applies to employees who have been in continuous service to the State and who are already members of the public retirement systems. Secondly, section 803 does not represent extra compensation but merely allows members who had a right to join a system, but were not informed of that right, the right to retroactive membership. Finally, plaintiffs have simply failed to distinguish the enhanced benefits provided under section 803 from the increased benefits allowed under article VII, § 8 of the State Constitution.
Plaintiffs’ argument ignores the fact that section 803 is a remedial statute which provides members who were unaware of their rights, or whose applications were lost or delayed, the benefit of the retirement system to which they were entitled. *591 (Governor’s Mem approving L 1993, ch 437, 1993 McKinney’s Session Laws of NY, at 2896.) This entitlement and its corresponding obligation simply do not run afoul of the no-gift prohibition of article VIII, § 1 of the State Constitution. (See, Ruotolo v State of New York, 83 NY2d 248; see also, Matter of Antonopoulou v Beame, 32 NY2d 126.)
As mentioned earlier, section 803 imposes the full costs of a member’s enhanced retirement benefits on the first employer if the employer affidavit is received after June 1, 1995. Thus, in certain situations, a school district or town will likely be in the situation of making contributions for the benefits of employees who are now employed by other school districts or public employers. Plaintiffs allege that such contributions in no way serve school district or town purposes, and thus are violative of article VIII, § 2 of the State Constitution. Article VIII, § 2 provides, "[n]o county, city, town, village or school district shall contract any indebtedness except for county, city, town, village or school district purposes, respectively.”
Defendants, in reply, argue that the plain language of article VIII, § 2 is proof of its inapplicability. This court agrees. Section 803 simply does not involve any contract for indebtedness, nor does it prevent the Legislature "from imposing costs upon municipal corporations regardless of whether they directly benefit therefrom.”
Defendants, again, fittingly rely on article VII, § 8’s express proviso that "nothing in this constitution contained shall prevent the legislature from providing for * * * the increase in the amount of pensions” (NY Const, art VII, § 8 [2]), to support their argument that "pension benefits are excluded from the indebtedness prohibited by Article VIII, § 2 of the State Constitution.”
Undeterred, plaintiffs argue that section 803 deprives the various school districts, towns and taxpayers of property without substantive due process. Prior to 1986, there had been no legislative enactment which required public employers to give notice to part-time employees of their options to join a public retirement system. Section 803, they argue, now requires plaintiffs to allow employees retroactive membership in the retirement systems in situations where "[employees] were deprived of notice of the right to enroll in the systems at a time when they served as temporary or part-time employees and when such notice was neither required nor routinely given to employees in that category.” Plaintiffs assert that this lack *592 of required notice, coupled with the result of imposition of all enhanced benefits on the first employer, represents a "governmental decision * * * [which] has been made in an arbitrary and capricious manner.”
First, the record before this court indicates that the plaintiffs had a duty to inform part-time employees of the right to membership in the New York State Teachers’ Retirement System prior to 1986. Since 1954, annual "Retirement Primers” notified the school districts of their duty to advise part-time teachers of their right to join the retirement system.
Furthermore, the record indicates that even before the retirement system promulgated a regulation in 1977 requiring public employers to advise their part-time employees of their right to join the New York State Employees’ Retirement System (2 NYCRR 324.5), there was a long-standing policy of requiring employers to inform their part-time employees of their membership rights.
"As long as the Legislature selects means which are reasonably calculated to serve a proper governmental purpose, the requirements of due process are satisfied.” (Wegman’s Food, Mkts. v State of New York, 76 AD2d 95, 98.) Here, the Legislature’s mission was to remedy the injustice "with respect to individuals who had rendered public service but were not advised of their right to join the State’s public retirement system.” The means selected to implement this mission consisted of determining whether the first employer had information concerning the employee’s knowledge of their rights to join a public retirement system. As the bill was originally enacted, if it was determined that the employee was eligible for retroactive membership, the first employer bore the full cost of the enhanced benefits.
However, since the recent ameliorative amendment to section 803 (e), the first employer may be forced to bear the entire cost of enhanced benefits for an employee who was only briefly employed at its locale, and then went on to work for another public employer for a significantly longer period of time, only if the employer affidavit certifying that first employment was received by the retirement system after June 1, 1995.
As defendants argue, if the costs of section 803 had been "socialized” from its inception, the first employer, who is charged with making the determination of retroactivity, would have little incentive to fully examine the merit of a claim. Therefore, section 803, as drafted, not only spreads the responsibility for evaluating claims effectively, but spreads the *593 costs associated with the statute because although an employer may be forced to absorb the costs of section 803 relief where it is the first employer, other employers must absorb the costs when that same employer is the second, third or fourth employer. In this court’s opinion, section 803 provides a readily available mechanism, far more efficient and fair than the Legislature’s individual "picture” bill method.
While a better methodology for allocating the enhanced benefits is available (perhaps now that the statute has expired, apportionment amongst all public employers based on percentage of payroll no matter when the employer affidavit was received by the system would permit a more equitable result), due process requirements do not require perfection from a legislative enactment. "[0]nly where the State interferes with a citizen’s property without 'rhyme or reason’ does a deprivation of due process occur [citation omitted].” (Wegman’s Food Mkts. v State of New York, 76 AD2d 95, 98, supra.)
Plaintiffs, however, allege that the requirements of section 803 also violate their procedural due process rights. As part of the section 803 application process, public employers must submit an affidavit in which they select one of the following choices:
"Complete either A or B, but not both.
"A. S/he was an employee and was not afforded the opportunity to join the_Retirement System, and should be given retroactive membership subject to verification of continuous service, as set forth in Section 803 * * *
"B. (Check all that apply)
"[ ] S/he was an employee but was in a position in which membership was not available because_. Therefore s/he is not eligible for retroactive membership.
"[ ] S/he expressly declined membership on a form which is on file in this office and, therefore, is not eligible for retroactive membership pursuant to Section 803.
"[ ] S/he did participate in a procedure explaining the option to join the Retirement System in which a form, booklet, or other written material was read from, explained or distributed and, therefore, is not eligible for retroactive membership pursuant to Section 803.
"[ ] S/he did participate in a procedure that a reasonable person would recognize as an explanation or request requiring a formal decision by him or her to join the Retirement System and, therefore, is not eligible for retroactive membership pursuant to Section 803.”
*594 According to plaintiffs, this procedure is drastically incomplete. They claim that situations where the employee knew of his or her rights to membership through other means (i.e., through fellow employees, through unions, etc.) or where membership was declined by the employee at a second or third public employer are not covered. Plaintiffs also maintain that the statute does not afford the employer an opportunity to challenge an employee’s claim that it was indeed the first employer, or the employee’s claim of continuous public service. Thus, plaintiffs believe that section 803 represents a deprivation of property without the requisite "meaningful opportunity to be heard”.
Defendants offer substantial evidence to the contrary. Section 803 (b) (3) (ii) and (iii) allow the first employer to deny retroactive membership if the individual "participate!/!] in a procedure explaining the option to join the system”, or "participate!/!] in a procedure that a reasonable person would recognize as an explanation or request requiring a formal decision” to join a retirement system. (Retirement and Social Security Law § 803 [b] [3] [ii], [iii].) Thus, despite plaintiffs’ claims to the contrary, the statute quite clearly allows evidence that a subsequent employer offered the employee membership, or that one of the retirement systems, or any other person or entity, conducted a procedure which could have apprised the individual of his or her rights.
Furthermore, the employer determines eligibility for retroactive membership by establishing "a review process which shall afford a member an opportunity to appear in person or in writing.” (Retirement and Social Security Law § 803 [b] [3].) This review process does not exclude the employer’s own records or those of another. There is simply nothing in the statute that prevents or limits the employer’s ability to investigate the applicant’s eligibility for section 803 relief. In fact, section 804 authorizes each retirement system "to promulgate rules and regulations to implement the provisions” of article 18 (Retirement and Social Security Law § 804), and section 805 specifically authorizes "a public retirement system to require that evidence of service be based upon records kept in the ordinary course of business.” (Retirement and Social Security Law § 805.)
And even more significant, it is the member who must prove to the employer by substantial evidence that he or she did not participate in a procedure which could have apprised him or her of their membership rights. (Retirement and Social Security Law § 803 [b] [3].)
*595 Finally, plaintiffs argue that the imposition of the costs of retroactive membership on the first employer deprives said first employers of the equal protection of the laws. Plaintiffs claim that it is likely that members now applying for retroactive membership worked for several public employers during their career. It is equally likely, they assert, that any number of those employers may have failed to give the requisite notice regarding rights to membership in the retirement systems. Despite the similar situations, for example, the first, second and third employers, the full cost of retroactive membership is imposed only upon the first employer, if the employer affidavit is filed after June 1, 1995.
Plaintiffs claim that although the amendment purports to limit the costs to the first employer, the first employer is still required to pay a highly disproportionate share of the total costs of retroactive membership. Plaintiffs argue that this imposition represents disparate treatment which can only be justified if it is reasonably related to a substantial governmental interest.
The Court of Appeals has held that equal protection claims will not pass constitutional muster merely because the statute was not made with " ' " 'mathematical nicety or because in practice it results in some inequality’ ” ’ ”. (Elmwood-Utica Houses v Buffalo Sewer Auth., 65 NY2d 489, 495.) The standard by which the statute is to be measured is whether the differential treatment has some reasonable basis. (Supra.)
This court again is persuaded by defendants’ arguments that while the first employer may bear the brunt of the enhanced costs in certain circumstances, that burden is shared by all public employers, and that the imposition of the enhanced costs on the first employer fostered the diligent investigation of all claims.
While the statute may not have been ideally drafted, it clearly affords equal protection to the plaintiffs.
In sum, based on the foregoing, and the strong presumption of constitutionality afforded legislative enactment, plaintiffs’ motion for summary judgment, seeking injunctive relief and a declaration of unconstitutionality as to Retirement and Social Security Law § 803, is denied in all respects.
The temporary restraining orders of June 30,1995 and January 29, 1996 are vacated.
Defendants’ cross motion is granted, and the verified *596 complaints dated June 27, 1995, January 19, 1996 and February 14, 1996 are dismissed.
No attorney’s fees are awarded.