OPINION OF THE COURT
Joseph Goldstein, J.
“Revolving door justice” and “plea bargaining” are phrases which some law enforcement agencies, politicians and professors use in less than a complimentary reference to the Judges who preside in Criminal Parts of this and other courts.
It should be noted that without an offer being made by the prosecutor, no plea bargain can take place. In cases involving “driving while intoxicated” or “driving while impaired”, as well as many other charges, many prosecutors maintain a “programmed plea bargaining schedule”.
As a practical matter, plea bargaining is a negotiation between the prosecutor and defense attorney during which, in most instances, the court has little or no input except perhaps regarding punishment. The “bargain”, once agreed upon between the two advocates, is then enunciated *631 in open court by the prosecutor and accepted by the defendant in the presence of the Judge and the defendant’s attorney. “Plea bargaining” is neither a new creature, nor one created by the trial courts, but, rather is recognized by the Legislature (Vehicle and Traffic Law, § 1196) and the appellate courts. (People v Selikoff, 35 NY2d 227; Santobello v New York, 404 US 257.)
It is claimed by some that plea bargaining is needed to alleviate congested court calendars and reduce the “backlog” in our courts. While this may have some bearing on the desire of the prosecutor to negotiate a “plea bargain”, oftentimes there are weaknesses in the People’s case of which only the prosecutor is aware, or strengths in the defendant’s case which counsel develops in negotiating a disposition of a criminal matter. Many times this will develop as a result of an arresting officer’s charging a crime which the prosecutor knows that the evidence does not support.
Such is the situation in these cases. The defendants have been charged with violating subdivision 3 of section 1192 of the Vehicle and Traffic Law, otherwise known as driving while intoxicated. In each case, the defendant in accordance with the statute and at the direction of the New York State trooper submitted to a “breathalyzer test” and the readings as reflected by the supporting deposition and the simplified traffic information were as follows: (a) Moir’s blood alcohol content was .05%, (b) Coutard’s blood alcohol content was .07%, and (c) Rutledge’s blood alcohol content was .09%. Two questions are here presented: (1) why were these defendants charged with the misdemeanor of subdivision 3 of section 1192 of the Vehicle and Traffic Law (driving while intoxicated) and (2) how does this motion come to be heard?
The motion before this court had its genesis on February 25, 1982, in the case of People v Peterec. Mr. Peterec was stopped by the New York State troopers, submitted to a breathalyzer test, and registered a .08* but was charged with violation of subdivision 3 of section 1192 of the *632 Vehicle and Traffic Law. The transcript of the proceedings with Mr. Peterec perhaps best describes the problem.
Upon being asked whether he understood the nature of the charges by this court the defendant said:
“the defendant: Driving while impaired; am I right?
“the court: No, driving while intoxicated.
“the defendant: Yes. Well, I took the test, Your Honor, and I got a .08.
“the court: The police [New York State troopers] have charged you with driving while intoxicated, which is a misdemeanor * * * Can you get yourself a lawyer?
“the defendant: No.
“the court: Do you work?
“the defendant: Yes, I work every day. I work in the City. I drive a cab.”
At that point there was an off-the-record discussion at the request of the District Attorney. The District Attorney then made an application to amend the charges to read a violation of subdivision 1 of section 1192 (driving while impaired), which is a traffic infraction,' a violation, and not a crime, and then further to move to reduce and amend that violation to read a violation of section 1180-a of the Vehicle and Traffic Law (an unclassified speed), contingent upon the defendant’s willingness to plead guilty to the amended and reduced charge. The court refused to participate in such a double reduction and made further inquiries. At the insistence of the court, a State trooper appeared before the court and stated as follows: “trooper: Your Honor, what the State Police are doing — anybody that’s arrested for DWI and brought in and is given a test — if it’s a .04 you still issue a summons for driving while intoxicated, 1192.3. The State Police say it’s up to the Judge or the District Attorney to reduce it to the infraction.”
The colloquy between the court and the trooper continued and the court, addressing a question to the trooper, asked what is the definition of an impaired condition.
“trooper: Impaired according to the Vehicle and Traffic Law?
“the court: That’s the law I’m asking about.
*633 “trooper: He would be impaired, as far as I know, up to, I believe, it’s .09.
“the court: What does that test show?
“trooper: .08.
“the court: So that he wasn’t intoxicated. He was impaired.
“trooper: Yes, sir.
“the court: Why was he charged with intoxicated? Why should he have to go out and get himself a lawyer? Why should the District Attorney have to go through — listen to this: He’s going to reduce it from a misdemeanor of ‘intox’ down to an ‘impaired’.
“trooper: Yes.
“the court: And then reduce that further to read a ‘speed’ only because your people are mischarging. Now, is that correct? Is that the way law enforcement people should be acting?
“trooper: Your Honor, I don’t agree with it. This is a ruling that is sent down from Albany.
“the court: Show me the ruling. I want to see the ruling. “trooper: I’ll bring a copy of it, Your Honor.
“the court: I want to see it this afternoon.”
And the case was adjourned to 2:00 p.m.
“trooper: Your Honor, it’s division policy throughout the State of New York —
“the court: [Interposing] Do you have a written memorandum to that effect?
“trooper: I am not free to offer it to the Court at this time ... It’s an internal memorandum.
“the court: How internal?
“trooper: State Police.
“the court: Do you have it in your possession? “trooper: No, sir, not on me.
“the court: Do you have it in this courthouse. “trooper: No, sir. I don’t ...
*634 “the court: You acknowledge, though, don’t you, Officer that this operator, this defendant, Peterec — whom your office or your officer — trooper I think you call them — charged a violation of Section 1192, sub. 3 and he’s not guilty of section 1192, sub. 3; is that correct?
“trooper: Well, if you’re going on the prima facie case of the .08 on the blood alcohol? You would have to say, yes sir, that he was not guilty.”
Shortly thereafter, the court dismissed the case against John L. Peterec, giving leave to the prosecution to recharge under the appropriate section of the law.
Within a few days, after this situation arose, and following several other similar dismissals, the District Attorney made an application to argue these three cases, all of which arose under similar circumstances. Time was given to both the District Attorney and to the defense attorneys to submit memoranda, and since misdemeanors are charged in each instance, it was necessary for the court to appoint Donna M. Brady, Esq., of Mineóla to act pro bono for defendant Coutard. James Moir had counsel retained by his family and Legal Aid was assigned at public expense to represent defendant Rutledge.
The Judges of this court have long demonstrated their concern for the ever increasing problem caused by the ingestion of alcohol combined with the operation of a motor vehicle on the roads of this county. In most instances, a strict construction of the statute is followed by the Judges. Driving privileges are suspended for 90 days following conviction of subdivision 1 of section 1192 of the Vehicle and Traffic Law, driving while impaired, and the mandatory fine is imposed, not a slight penalty or a slap on the wrist. In a suburban county such as ours, the use of an automobile by most of its citizens is often as necessary as placing bread upon their tables.
However, the procedure in the Peterec case and the cases before the court at this time highlight what appears to be an abuse, of discretion by a law enforcement agency. The New York State troopers, by internal memoranda to its various barracks, have apparently directed that any person stopped for driving while in an intoxicated condition *635 shall be charged with violation of subdivision 3 of section 1192 of the Vehicle and Traffic Law, a misdemeanor, notwithstanding that the breath test to which he submits indicates a blood alcohol content between .04 and .09.
As Judge Wachtler stated, “It is a fundamental requirement of due process that a criminal statute must be stated in terms which are reasonably definite so that a person of ordinary intelligence will know what the law prohibits or commands * * * The concept promotes fairness to the defendant in two respects. First it ensures that the defendant will receive adequate warning of what the law requires so that he may act lawfully. ‘The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed’ (United States v Harriss, 347 US 612, 617). Secondly, it serves to prevent arbitrary and discriminatory enforcement by requiring ‘boundaries sufficiently distinct’ for police, Judges and juries to fairly administer the law (United States v Petrillo, [332 US 1] 7).” (People v Cruz, 48 NY2d 419, 423-424.)
Perhaps before further dealing with the statute, it would be helpful to understand the practical in-court, day-to-day application of the Vehicle and Traffic Law dealing with intoxication. As a matter of procedure, in most cases where counsel for the defendant has been either retained or assigned, counsel and the Assistant District Attorney carry on plea bargaining negotiations. In the event of a first offense, a charge of driving while intoxicated (an unclassified misdemeanor for which the defendant might be sent to jail) is usually “plea bargained”, or reduced to “driving while impaired”, a violation, not a misdemeanor. If the original charge was a violation of subdivision 1 of section 1192 of the Vehicle and Traffic Law, driving while impaired as a first offense, the District Attorney and the defense attorney usually negotiate a plea which would permit the defendant to plead to a speeding charge in lieu of the original charge. It should be further noted that in these negotiations between defense counsel and the Assistant District Attorney, the Judge does not participate.
Additionally, of course, if a defendant is charged with a misdemeanor, the court is bound to see that he is repre *636 sented by counsel. If the defendant cannot afford his own attorney, the court must appoint counsel usually at public expense. Such is the case with two of these defendants. There is no question that if the defendants had failed or refused to submit to blood alcohol tests, then the personal observation of the State trooper as enunciated in his supporting depositions might well be sufficient to properly charge each of these defendants with driving while intoxicated.
In these cases, however, we are not faced with the question of whether or not these defendants refused to take a blood or chemical analysis as required by the statute (Vehicle and Traffic Law, § 1194). In each instance, they submitted to a breathalyzer test.
The issue then is whether or not the State Police can reasonably charge the defendants, each of whom has exhibited blood alcohol readings of less then .10, as persons who operated a motor vehicle while in an intoxicated condition.
An examination of section 1195 of the Vehicle and Traffic Law is crucial to the disposition of this case.
“1. Upon the trial of any action or proceeding arising out of actions alleged to have been committed by any person arrested for a violation of any subdivision of section eleven hundred ninety-two, the court shall admit evidence of the amount of alcohol or drugs in the defendant’s blood as shown by a test administered pursuant to the provisions of section eleven hundred ninety-four of this chapter.
“2. The following effect shall be given to evidence of blood-alcohol content, as determined by such tests, of a person arrested for a violation of section eleven hundred ninety-two:
“(a) Evidence that there was .05 of one per centum or less by weight of alcohol in such person’s blood shall be prima facie evidence that the ability of such person to operate a motor vehicle was not impaired by the consumption of alcohol, and that such person was not in an intoxicated condition;
“(b) Evidence that there was more than .05 of one per centum but not more than .07 of one per centum by weight *637 of alcohol in such person’s blood shall be prima facie evidence that such person was not in an intoxicated condition, but such evidence shall be relevent evidence, but shall not be given prima facie effect, in determining whether the ability of such person to operate a motor vehicle was impaired by the consumption of alcohol.
“(c) Evidence that there was more than .07 of one per centum but less than .10 of one per centum by weight of alcohol in his blood shall be prima facie evidence that such person was not in an intoxicated condition, but such evidence shall be given prima facie effect in determining whether the ability of such person to operate a motor vehicle was impaired by the consumption of alcohol.” (Emphasis supplied.)
In the case at bar, there is no reasonable cause to believe that the defendants’ prima facie presumption of nonintoxication under section 1195 can be overcome, nor is it reasonable to believe that it would be proven beyond a reasonable doubt that the defendants were intoxicated.
The State troopers’ depositions fall far short of providing reasonable cause to believe that this burden can be met, when balanced against the Legislature’s presumption of nonintoxication. Such depositions, though perhaps supportive of a finding of driving while impaired, do not rise to the level necessary to overcome the statutory presumption of nonintoxication.
It is interesting to note that in exercising its discretion in the Peterec case the prosecutor, pursuant to subdivision 2 of section 1196 of the Vehicle and Traffic Law, has indicated his belief that not only was the defendant not guilty of being intoxicated while operating his car, but that an appropriate disposition would have been a nonsection 1192 plea bargain.
In his memorandum of law, the District Attorney, referring to CPL 170.35 and 100.40 in reference to the weight the court must accord the State trooper’s supporting deposition states:
“The standard for sufficiency in that event would be whether the information was ‘sufficient on its face’ pursuant to the requirements of Section 100.40 of the CPL. The *638 applicable portion of 100.40 provides that an information is sufficient on its face, when:
“ ‘(b) The allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory portion of the information’.
“This standard of sufficiency at the arraignment level is a comparatively low burden; it is less than probable cause * * * and certainly far less than that of establishing a prima facie case” (emphasis added).
The District Attorney cites the cases of People v Cruz (48 NY2d 418, 419, supra) and People v Miller (83 Misc 2d 118) to support his contention that the “routine” supporting depositions are sufficient. This court disagrees. In each of those cases the defendants failed or refused to submit to a breathalyzer test and were properly charged with driving while intoxicated. In People v Farmer (36 NY2d 386), where a test was taken, the reading was .21%, clearly far in excess of the readings contemplated by section 1195 of the Vehicle and Traffic Law. In order to overcome the statutory presumption accorded the operator of a motor vehicle by section 1195, the arresting trooper must, submit a deposition of substantially greater proportion, depth and detail than submitted in these cases.
In sum, “the prohibition against driving while the ability to do so is impaired by alcohol * * * is not a vague and indefinite concept * * * It is evident from the statutory language and scheme that the question in each is whether, by voluntarily consuming alcohol, this particular defendant has actually impaired, to any extent, the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver.” (People v Cruz, supra, pp 426-427.) The statutory limits of driving while impaired are clearly enunciated by the Legislature. The statutory intent is clear when one examines the detailed legislative history of these portions of the Vehicle and Traffic Law. “There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed”. (Federal Deposit Ins. Corp. v Tremaine, 133 F2d 827, 830.)
*639 “Driving while intoxicated is a more serious offense * * * and thus involves a greater degree of impairment * * * Intoxication is not an unfamiliar concept. It is intelligible to the average person * * * and has long been held to mean an incapacity to perform various mental or physical acts which an average person would be able to do * * * [T]he standard for determining intoxication is constant; that is, whether the individual’s consumption of alcohol has rendered him incapable of employing the physical or mental abilities needed” (People v Cruz, supra, p 427); in this case, operating a motor vehicle in a safe and proper fashion.
The Legislature has set clearly definable parameters within which the question of impairment versus intoxication can be defined by scientific means and upon expert testimony. It would appear to this court that before a proper charge for the misdemeanor crime of driving while intoxicated can be sufficiently laid in face of a blood alcohol content reading of less than .1%, a police officer must be able to provide something more than the usual supporting deposition.
Section 1195 of the Vehicle and Traffic Law must be considered a double-edged sword. The Legislature has defined the ingestion of alcohol which creates a blood alcohol content in excess of .05 and less than .1 as being “impaired”. Therefore, more must be observed by the State trooper and enunciated in his supporting deposition before this court will sustain a charge of intoxication where the scientific evidence clearly points to something else.
While this court does not have before it a copy of the New York State Police “internal directive”, the Legislature did not create this statute to permit any law enforcement agency to arbitrarily interpret the law as it regards the citizenry of this community. In each of these cases the simplified traffic information is dismissed with leave to the People within 30 days of this decision to charge the appropriate violation of the Vehicle and Traffic Law if they deem same advisable.
This dismissal should not be construed to mean that this court has or will be lenient with the “drunk driver”. The “drunk driver” is a serious threat to life and health on our *640 public highways today, and must be dealt with in the firmest possible manner. It is the judiciary’s responsibility, however, to pronounce judgment within the guidelines prescribed by the Legislature. Reverence for the law must once again become the political religion of the community and let all who serve it be bound by its spirit as well as its language.
The court would like, at this time, to thank defense counsel and the District Attorney for their detailed and persuasive memoranda of law.

 See subdivision 1 of section 1192 and section 1195 of the Vehicle and Traffic Law, both of which refer to driving while impaired.