Matter of New York City Dept. of Educ. v Rosa (2025 NY Slip Op 25175)

[*1]

Matter of New York City Dept. of Educ. v Rosa

2025 NY Slip Op 25175

Decided on March 19, 2025

Supreme Court, Albany County

Schreibman, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 19, 2025
Supreme Court, Albany County

In the Matter of the Application of 
 The New York City Department of Education, Petitioner, For a Judgment Pursuant to Article 78 of the Civil Practice Law and Rules

against
Betty A. Rosa in her official capacity as the Commissioner of Education of the State of New York; HELLENIC CLASSICAL CHARTER SCHOOL — STATEN ISLAND, also known as HELLENIC CLASSICAL CHARTER SCHOOLS; and FRIENDS OF HELLENIC CLASSICAL CHARTER SCHOOLS, INC., Respondents.

Index No. 902198-24

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
Attorney for Petitioner
100 Church Street
New York, New York 10007
By: Todd Krichmar, Assistant Corporation Counsel
LETITIA JAMES
Attorney General of the State of New York
Attorney for Respondent Betty A. Rosa
The Capitol
Albany, New York 12224
By: David C. White, Assistant Attorney General, of Counsel
WHITEMAN OSTERMAN & HANNA LLP
Attorneys for Respondent Hellenic Classical
Charter School — Staten Island
One Commerce Plaza
Albany, New York 12260
By: Kevin P. Quinn, Esq.

Julian D. Schreibman, J.

State law requires the City of New York (the "City") to provide duly-organized charter schools with space in its public school facilities, rent-free. (Ed.Law. §2853[3][e]). If the City fails to do so, the law requires the City to pay the charter school's rent for "an alternative privately owned site selected by the charter school." (Ed.Law §2853[3][e][5]). This rental assistance is limited by law to the lesser amount of 30% of the school's basic tuition, as calculated under a statutory formula, or "the actual rental cost" of the chosen site. (Id.). The issue presented in this Article 78 petition is the application of the phrase "actual rental cost" to the rental arrangement entered into by Respondent Hellenic Classical Charter School-Staten Island (the "School") with its affiliate Respondent Friends of Hellenic Classical Charter Schools, Inc ("Friends of Hellenic"). Because Respondent Commissioner of Education of the State of New York Betty A. Rosa ("Commissioner") misinterpreted the law, in particular by effectively reading the limiting term "actual" out of the statute, her determination was "affected by an error of law" (CPLR §7803[3]) and must therefore be vacated.
The School is a duly-organized charter school which was not provided with space within a public school facility in the City. Accordingly, it was eligible for rent-reimbursement through §2853[3][e][5]. On July 17, 2019, the School entered into a lease agreement (the "Lease") with non-party Greek Orthodox Community Holy Trinity Church of Staten Island (the "Church") to occupy a building owned by the Church and located at 1641 Richmond Avenue, Staten Island (the "Building"). The Lease provided for a fixed rent that changed from year to year according to a schedule in the Lease.
In or about September 2020, the School and the Church entered into a Second Amended Lease Agreement (the "Second Lease")[FN1]
by which the School added to the leased premises an additional area of approximately 13,000 square feet of vacant land (the "Vacant Land," together with the Building, the "Premises"). Under the terms of the Second Lease, the rent increased somewhat to account for the additional Vacant Land. The Second Lease was executed on behalf of the School by its Chairperson, Charles Capetanakis ("Capetenakis").
Also in 2020, Friends of Hellenic was incorporated, with Capetanakis as its Chairperson. The two entities share multiple board members. On or about February 26, 2021, the School assigned the Second Lease to Friends of Hellenic. This assignment was specifically contemplated and authorized in the Second Lease (NYSCEF Doc16, at NYSCEF page 73, ¶18[P]). Capetanakis executed the Assignment and Assumption of Lease Agreement (the "Assignment") on behalf of the School. Capetanakis also signed the Assignment on behalf of Friends of Hellenic. Simultaneous with the Assignment, the School and Friends of Hellenic executed a Sublease by which the School subleased the Premises from Friends of Hellenic. Capetanakis signed the Sublease on behalf of both the School and Friends of Hellenic. Also on that date, Capetanakis executed a Guaranty on behalf of the School by which the School guaranteed payment of the rent due from Friends of Hellenic under the Second Lease. Broadly, [*2]under the Sublease, the School remains primarily obligated to the Church and the Church can enforce its rights directly against the School.
Having been assigned the Second Lease, Friends of Hellenic owed the Church the same rent that the School had been paying according to its terms. Under the terms of the Sublease, however, the rent paid by the School to Friends of Hellenic is approximately triple the rent set forth in the Second Lease. In other words, the School, with a right under the Second Lease to rent the Premises from the Church for fixed rent for years to come, assigned the Lease to an affiliate, apparently for no consideration, and then agreed to pay the affiliate triple what it had been paying the Church for the same Premises. Ultimately the Church, as owner of the Premises, continued to receive the same rent, but the School's costs were vastly increased as a result of the Assignment and Sublease.
Petitioner New York City Department of Education ("NYCDOE") had approved and paid rental reimbursements to the School under the Lease. NYCDOE declined to approve increased payments under either the Second Lease or the Sublease on the grounds that the sums denominated rent therein included expenses that were not "actual rent" for the School's facilities. With respect to the Second Lease, NYCDOE objected to the inclusion of sums for the Vacant Land. More significantly, with respect to the much higher amounts purportedly charged under the Sublease, NYCDOE took the position that the School and Friends of Hellenic were essentially alter egos and that the transactions culminating in the Sublease falsely inflated the rent with the result that only a portion of the rental reimbursement would go to the true landlord while the School/Friends of Hellenic would pocket the inflated difference. NYCDOE points to statements by Friends of Hellenic to the effect that it intended to use the income stream under the Sublease to finance building construction on the Vacant Land. According to NYCDOE, this showed that the sums being charged to the School under the Sublease were not really rent and therefore should not be eligible for rent reimbursement under Education Law §2853[e][5].
NYCDOE contended that "rent" could only include the leasing of premises actually used for the School's operations and could not include either vacant land or the cost of making improvements thereto.[FN2]
NYCDOE communicated its refusal to increase the rent subsidy above the amount set forth in the Lease on June 22, 2021. More than a year later, in response to a demand letter tendered by the School's attorneys (NYSCEF Doc.No.15, at NYSCEF pp. 122-123, Ex.G) seeking payment of the accrued difference between the rental assistance provided pursuant to the Lease and the amount purportedly due under the Sublease, NYCDOE reaffirmed its position by letter dated September 20, 2022. (NYSCEF Doc. No.15, Ex.H).
Upon NYCDOE's formal denial of increased rental assistance payments under the Sublease, the School commenced a petition to the Commissioner as permitted under the Education Law. The standard of review applied by the Commissioner was the same as under an Article 78 petition. (Ed.Law. §2853[3][e][3]). The School argued that NYCDOE's position that rent could only be reimbursed to the extent it was for space actually used by students was [*3]improper. More significantly, the core of the School's argument was that neither NYCDOE nor the Commissioner should look beyond the Sublease to inquire how the landlord, i.e., Friends of Hellenic, would spend the rent money paid by the School. (See NYSCEF Doc. No.15, Ex. A, ¶¶25-26). Rather, according to the School, the only relevant fact for calculating the amount of rental reimbursement is the amount of rent set forth in the applicable leasing documents — here, the Sublease.
On November 7, 2023, the Commissioner issued her decision sustaining the School's appeal and directing NYCDOE to reimburse the School for the amount of rent set forth in the Sublease. (NYSCEF Doc. No. 22). As a preliminary matter, the Commissioner rejected NYCDOE's argument that the School's petition was untimely, basing her calculation of the timeliness of the School's petition on the September 20, 2022 reaffirmation of NYCDOE's position, and not any earlier communication or act of non-payment. Petitioner does not, in this Article 78 proceeding, challenge the Commissioner's determination of timeliness.
Turning to the substance, the Commissioner briefly dispensed with NYCDOE's position. Finding that "actual" was an undefined statutory term, the Commissioner accorded it its usual and commonly understood meaning of "existing in fact or reality." Finding that, under the terms of the Sublease, the School's rent "has, in fact, increased," the Commissioner deemed the inquiry at an end.[FN3]
To the extent this produced a result that the Commissioner deemed "concerning," she concluded that "any change must come from" the Legislature.
While the Court agrees both that the term "actual" should be given its ordinary meaning, and that that ordinary meaning is "existing in fact or reality," within the context of interpreting this statute, the Commissioner did not vest the word "actual" with any meaning. The Commissioner determined the rent was "actual" by reference to the terms of the Sublease, i.e., because the Sublease exists and the School has paid pursuant to it, then the rent is "actual." Examining this conclusion carefully, however, reveals that this makes "actual" superfluous. Under the Commissioner's reading, whether the statute said "rental cost" or "actual rental cost" would produce the same result. To the extent the Commissioner believed that "actual" required a showing that the money was spent rather than just charged, it is redundant with the word "cost."
The Commissioner's conclusion is in derogation of the fundamental canon of statutory construction that "meaning and effect should be given to all language of a statute . . . . Words are not to be rejected as superfluous where it is practicable to give each a distinct and separate meaning." (Rosner v Metropolitan Property and Liability Ins. Co., 96 NY2d 475, 479 [2001][internal quotation marks and citations omitted]). Moreover, while words are to be given their ordinary meaning, to properly understand a word's use in a statute it is necessary to consider its context. A phrase or term "though susceptible of a wide interpretation, becomes one limited in its effect by the specific words that precede it; in the vernacular, it is known by the company it keeps." (People v Illardo, 48 NY2d 408, 416 [1979]). Finding that a legislature's chosen statutory language is "a mere stringing of synonyms" is disfavored. (Id. at 415).
The parties agree that there is no express legislative history to guide the Court's analysis. [*4]The language used by the Legislature in the rental reimbursement provisions, however, reveals that it sought to guard against abuse. (See Tall Trees Const. Corp. v ZBA of the Town of Huntington, 97 NY2d 86, 91 [2001][court must give related legal provisions "a plain and harmonious meaning" without rejecting words as superfluous]). These provisions enable charter schools to receive money from the government based on a calculation using a school's "rent" or "tuition." It takes nothing more than common sense to recognize that this creates an incentive for a school to maximize those categories, at least on paper, in order to receive a greater benefit. There is nothing inherently wrong with such efforts but, in its role of carefully guarding the public fisc, the Legislature plainly sought to regulate the degree to which a school could roll into those categories unrelated expenses.
With respect to tuition, the Legislature did not simply refer to 30% of a school's tuition, which might include any number of fees or charges. Rather, the statutory formula requires use of the "base" tuition, which is then multiplied by a formula referencing the enrollment of the school. 
The use of the terms "actual" and "cost" on either side of the word "rent," reflect a similar intent. By adding the word "cost," the Legislature ensured that reimbursement would be based not on the nominal rent on paper, but the outlay actually made by a school. The use of this modifier thus precludes a situation where, for example, a benefactor of a school provides space to it under a lease providing for payment of rent, but then never collects the rent. By requiring that rent be a true "cost," the Legislature ensured that a school could obtain reimbursement only for rent that is truly paid.
NYCDOE correctly reads the word "actual" to perform a similar limiting role, modifying the term "rent" so that it encompasses only costs that are actually for the rental of educational facilities and not some other purpose. Understanding "actual" to have this meaning gives it a role in the statute, whereas the Commissioner's reading does not. By recognizing that the Legislature's use of the phrase "actual rental cost" demonstrates an intent to limit availability of the rental reimbursement in ways that using the term "rent" alone would not, this interpretation fulfills the obligation to afford meaning to all of the Legislature's chosen words while giving to each no more than their ordinary and customary meaning. It has the added benefit of avoiding "concerning" outcomes without throwing the matter back to the Legislature to fix language that does not need fixing. "[I]n construing a statute it will be presumed that the Legislature did not intend an unreasonable result to ensue from the legislation enacted . . . and unless the language forbids, the statute must be given an interpretation consonant with that presumption." (Statutes §143; see Long v State of New York, 7 NY3d 269, 273 [2006][statutes should be construed "to avoid objectionable, unreasonable or absurd consequences"]). The Court notes that its reading of the statute is in harmony with, not contrary to, the decision of our sibling court in Brooklyn Laboratory Charter School v NYC Dept. of Educ., 58 Misc 3d 726 [Sup.Ct. NY Cty. 2017]).
The School argues that NYCDOE should not be looking "under the hood," but rather should simply acknowledge the contents of any given leasing agreement without regard to what the "landlord" might do with its income stream. But none of the Respondents have cited to any law or regulation that precludes NYCDOE from making factual inquiries into the bona fides of any transaction submitted to it. To the contrary, the fact that materials must be submitted to NYCDOE for approval and that NYCDOE's determination is subject to review under a highly deferential standard all support the contention that NYCDOE has the authority to inquire into the substance of claims for reimbursement.
To be sure, in most cases, there should be no need to go beyond a written lease, particularly in the case of an arms-length transaction. Here, however, there were multiple red flags identified by Petitioner. These include the fact that the "rent" had suddenly increased exponentially following a related party transaction (a transaction which, as NYCDOE points out, almost certainly violates the School's charter). Plus, available information revealed that the related-party landlord would be using most of the "rent" to fund other projects on behalf of the School. In addition, the School acknowledged that even under the Second Lease, a portion of the rent was attributed to the Vacant Land, not the Building.
In responding to concerns about how the excess rent would be used, the School has been quick to defend Friends of Hellenic as using its resources for the benefit of the School. In doing so, the School is maintaining contradictory positions — suggesting simultaneously that it is not a tenant's business how a landlord spends its rental income while seeking to assure the Commissioner and the Court that the School would be the beneficiary of these funds due to the close relationship of the two entities. It is important to recognize that the Commissioner's statutory interpretation would endorse the first of these positions and render the second unnecessary. No showing about the destination of any monies could be required and NYCDOE would be compelled to approve reimbursements in cases far more "concerning" than the one presented here. The reading reached by this Court permits NYCDOE to be vigilant not merely for expenditures that might benefit the School but are not rent, but for expenditures characterized as "rent" that do not benefit the School at all — something the Commissioner's decision would not allow.
The School also points out that, regardless of any issues regarding the inflation of the rent, there is no dispute that even under the Sublease the nominal rent remains lower than the statutory cap based on tuition. This is certainly a fact that NYCDOE and, potentially, the Commissioner could consider, but it is not relevant to the issue of statutory construction presented to this Court.
Finally, both sides question the motives of the other. Respondents allege that NYCDOE's position in this matter is a product of what they claim is the City's long-standing animus toward charter schools, resulting in the practice of making every step of a charter school's operations as difficult as possible. Even if such an animus exists, it does not preclude NYCDOE from correctly reading a statute. To the extent the City is motivated by such an animus, the correct place to consider this is in the context of determining whether NYCDOE acted in an arbitrary or capricious manner — a question that the Commissioner did not reach.
Petitioner, in turn, complains that the Commissioner, noting evidence of the purported animus, over-simplified the matter by mistakenly treating the situation as falling within the State's over-arching policy of providing public funding for charter schools in the City. Petitioner is correct that the provision providing general financial support is contained in a different section of the Education Law. And, to be sure, allowing a school to improperly inflate its rent could actually undermine this policy. At best, it could allow such a school to put itself on a superior, unequal footing relative to other charter schools that either received space in the public school system or did not find a way to increase their nominal rent without increasing their rental cost. At worst, it could result in taxpayer funds being diverted for purposes having nothing at all to do with supporting a charter school. But it is equally clear that the obligation of the City to either provide space or reimburse rent goes hand in hand with the other measures of public support required by the Education Law. The Court does not see any basis to conclude that the [*5]Commissioner's legal conclusion, while erroneous, was reached through anything other than a good faith analysis of the relevant legal provision.
For the foregoing reasons, the Commissioner's Determination that NYCDOE lacked authority to reject reimbursement of expenses that did not actually constitute rent is an error of law. The Determination must therefore be vacated. While both sides have briefed the underlying substantive issues and they are discussed above to provide background and context, the Commissioner has not passed on them. Accordingly, the matter must be remanded to the Commissioner to determine, guided by the statutory construction provided herein, whether NYCDOE acted arbitrarily or capriciously when it denied the School rental reimbursement for (1) the Vacant Land or (2) the costs of construction or financing of construction on the Vacant Land on the grounds that such expenditures were not, as a factual matter, "actual rent."
Otherwise, the Court has considered any remaining arguments not specifically addressed herein and finds them unavailing or unnecessary to reach.
Accordingly, it is hereby
ORDERED and ADJUDGED that the Amended Petition is granted to the extent set forth herein; and it is further
ORDERED that the Commissioner's Decision No 18,352, is hereby annulled; and it is further
ORDERED that the matter is remanded for further proceedings before the Commissioner consistent with the Court's statutory construction and determination herein. 
This shall constitute the Decision and Order of the Court. The original Decision and Order is being filed with the Albany County Clerk via NYSCEF. The signing of this Decision and Order shall not constitute entry or filing under CPLR §2220. Counsel is not relieved from the applicable provisions of that rule regarding notice of entry.
SO ORDERED.
Dated: March 19, 2025
Kingston, New York
ENTER,
JULIAN D. SCHREIBMAN, JSC
Papers considered: Notice of Petition, Verified Petition and Memorandum of Law by Todd Krichmar, Assistant Corporation Counsel dated March 1, 2024, with Exhibits A-H; Amended Notice of Petition and Amended Verified Petition by Todd Krichmar, Assistant Corporation Counsel, dated March 4, 2024, with Exhibits A-H; Verified Answer and Memorandum of Law by David C. White, Esq. dated June 6, 2024, with Exhibits A-J; Affidavit of James P. Gavin sworn to June 5, 2024; Answer and Memorandum of Law by Kevin P. Quinn, Esq. dated June 7, 2024; and Reply Memorandum of Law by Todd Krichmar, Assistant Corporation Counsel, dated June 27, 2024.

Footnotes

Footnote 1:The School and the Church entered into a First Amened Lease Agreement on the same date that they entered into the original Lease. The differences between the Lease and the First Amended Lease Agreement, if any, are not material here.

Footnote 2:In its Reply Brief, Petitioner acknowledges that "actual rent" is not limited to literal classroom space or an academic building, but must also include facilities such as playgrounds and parking lots or appurtenances like sidewalks. Petitioner's contention is that the cost of leasing premises that are not actually used by a school's students during the year in question, such as a construction site, are not part of a school's "actual rent."

Footnote 3:The Commissioner separately expressly rejected the suggestion that "actual" should be read to mean "reasonable." This is presumably correct, but it does not appear that NYCDOE made this argument before the Commissioner and it does not do so here. Rather, Petitioner's argument is that "actual" should be read as modifying and explaining the scope of the term "rent."